# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE

NEWS RELEASE #050

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **18th day of October, 2017**, are as follows:

**BY CRICHTON, J.:**

2017-B -0178     IN RE: RONALD SEASTRUNK

The disclosure obligations found in Rule 3.8(d) of the Louisiana Rules of Professional Conduct and in Brady v. Maryland are coextensive.  For this reason, we find ODC failed to meet its burden of proof in this case and dismiss all charges against respondent.

JOHNSON, C.J., concurs in result.
WEIMER, J., concurs and assigns reasons.
HUGHES, J., concurs with reasons.

**SUPREME COURT OF LOUISIANA**

**No. 2017-B-0178**

**IN RE:  RONALD SEASTRUNK**

**ATTORNEY DISCIPLINARY PROCEEDING**

**CRICHTON, J.**

This attorney disciplinary matter arises from formal charges filed by the Office of Disciplinary Counsel ("ODC") against respondent, Ronald Seastrunk, an assistant district attorney in Vernon Parish.  Specifically, ODC alleges respondent violated Rule 3.8(d) of the Louisiana Rules of Professional Conduct in failing to disclose exculpatory evidence.  As a result, this Court must now determine an issue of first impression with ramifications beyond this respondent:  whether the ethical duty outlined in Rule 3.8(d) is broader than the similar duty outlined by the United States Supreme Court's landmark case of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).  For the reasons that follow, we find the duties set forth above are coextensive.  As a result, we find ODC failed to meet its burden of proof in this case and dismiss all charges against respondent.

**FACTS AND PROCEDURAL HISTORY**

These allegations against respondent arise out of the prosecution of Justin Sizemore ("Sizemore") for the homicide of Christopher Hoffpauir.  In this case, the discipline-related issues, namely, whether the alleged withheld evidence was material and exculpatory, are fact and case specific.  Therefore, it is necessary to understand the procedural background of the underlying criminal prosecution.

1

On June 14, 2010, Christopher Hoffpauir's body was discovered in a roadside ditch in Vernon Parish. Christopher's estranged wife, Kristyn Hoffpauir, gave conflicting recorded statements to detectives of the Vernon Parish Sheriff's Office. In the first statement, on June 15, 2010, Kristyn denied any involvement in her husband's murder. In the second statement, on June 16, 2010, Kristyn reported that, on the day of the murder, she picked up Sizemore and then called Christopher, asking him to assist her in a roadside emergency. According to Kristyn, she and Sizemore wanted to lure Christopher to their location, because Sizemore wanted to talk to Christopher about his relationship with Kristyn. Kristyn stated that Sizemore got into the trunk of the car because she did not want Christopher to see her with another man. When Christopher arrived, Sizemore exited the trunk through the passenger compartment, got out of the car, and shot and killed Christopher. Sizemore picked up the spent shell casings, and he and Kristyn left the scene. Sizemore stopped the car on a bridge near Lecompte, Louisiana, and threw the gun and spent casings off the bridge. Kristyn denied knowing that Sizemore was going to kill Christopher.

On June 17, 2010, Kristyn participated in a video reenactment of the murder at the crime scene. During the reenactment, Kristyn again related that Sizemore was hiding in the trunk, got out, and shot Christopher.

Sizemore and Kristyn were subsequently indicted for Christopher's homicide. In advance of trial, Kristyn accepted a plea agreement, wherein she pleaded guilty to manslaughter, conspiracy to commit manslaughter, and obstruction of justice. Sentencing was deferred pending her testimony against Sizemore.

District Attorney Asa Skinner assigned respondent, along with Assistant District Attorney Scott Westerchil, to prosecute the case. District Attorney Skinner, respondent, and Mr. Westerchil agreed that there was no prosecutor who was "first

2

chair," or primarily responsible, for the case. Respondent and Mr. Westerchil simply agreed upon a division of labor between them, particularly with regard to the testimony of the witnesses for which each would take responsibility.

Despite Kristyn's plea agreement, the prosecutors remained skeptical about her version of the events, specifically regarding Sizemore's location before the shooting. The vehicle driven to the scene was a Mitsubishi Eclipse convertible. The vehicle had scant room in the trunk to begin with, and a metal bulkhead separated the passenger compartment from the trunk. Mr. Westerchil, who was responsible for Kristyn's testimony, advised Kristyn that he did not believe her statements about Sizemore hiding in the trunk. During the first meeting, for which District Attorney Skinner and respondent were present, Kristyn maintained this version of the events. During a subsequent meeting with only Mr. Westerchil, Kristyn admitted that Sizemore had hidden in brush along the side of the road, from which he ambushed Christopher. Mr. Westerchil memorialized this meeting in handwritten notes, but he did not disclose this meeting to the defense, as he did not consider them to be exculpatory.

**The First Trial: Failure to Disclose Kristyn's Conflicting Statement**

At Sizemore's first trial in November 2011, Mr. Westerchil advised the jury in his opening statement that Kristyn would testify that Sizemore lay in wait along the side of the road for her and Christopher to return to the scene. Sizemore's attorney, Tony Tillman, did not know until then that Kristyn's testimony would differ from her initial statements to the police. On the second day of trial, Mr. Tillman objected, noting that Kristyn gave "substantially conflicting statements." Judge James R. Mitchell, who presided over Sizemore's first trial, ordered Mr. Westerchil to give Mr. Tillman a copy of the notes he had taken during his interviews

3

with Kristyn, which Mr. Westerchil did. After reviewing the notes, Mr. Tillman conferred with Sizemore, who opted to proceed. The jury was ultimately unable to reach a verdict, and Judge Mitchell declared a mistrial.

**The Second Trial: Failure to Disclose Statements Concerning Kristyn's Possession of a Gun**

Sizemore's second trial revealed an additional piece of evidence that respondent allegedly failed to disclose. As background, Jody Thibeaux ("Thibeaux") had been called as a defense witness in the first trial. Thibeaux, who was previously married to Kristyn's sister, Misty, testified Kristyn told him that she was the beneficiary of Christopher's $400,000 life insurance policy and that she had killed Christopher. After the first trial, District Attorney Skinner asked Detective Ray Ortiz of the Vernon Parish Sheriff's Office to interview Thibeaux. Thibeaux further reported that Misty's mother told Misty that, approximately three years earlier, she had found a .22 caliber revolver in Kristyn's closet. Thibeaux also indicated that, during this same time period, Kristyn had threatened to kill her mother. After the interview, Detective Ortiz told respondent what Thibeaux said about the revolver and asked respondent if that would be considered hearsay. Respondent told Detective Ortiz it probably was but that he would have to look at it more closely.

A few days later, Mr. Westerchil, respondent, and District Attorney Skinner met to discuss trial strategy. Detective Ortiz presented his written report of Thibeaux's statement, telling the prosecutors he had omitted information regarding the revolver from his report. District Attorney Skinner advised that it was not necessary to put the information about the revolver in the report because owning or possessing a gun is not a crime, the event occurred more than three years before the

4

murder and was too remote in time to be relevant, and, critically, Thibeaux was a defense witness. Detective Ortiz did not advise the prosecutors at all about Kristyn's threat to kill her mother, because he intended to follow up with Kristyn's sister and mother. Mr. Westerchil, who was responsible for cross-examining Thibeaux, intended to supplement the State's discovery responses to disclose Detective Ortiz's report, but District Attorney Skinner instructed him not to do so.

At the second trial, on direct examination, Kristyn testified that she had no experience with firearms, she did not hunt, she did not own a weapon, and she had never shot a gun. During Mr. Westerchil's cross-examination of Thibeaux, Mr. Tillman learned of his interview by Detective Ortiz and immediately objected to any testimony regarding the undisclosed interview. Judge Mitchell excused the jury and entertained arguments regarding the objection of defense counsel, during which Mr. Westerchil, joined by respondent and District Attorney Skinner, argued that the State was not required to disclose the report of Thibeaux's interview because it contained no exculpatory material. Though Judge Mitchell reviewed the report and found in it an example of exculpatory material, Judge Mitchell nevertheless overruled Mr. Tillman's objection, finding the information contained in the report had already been testified to and provided to Mr. Tillman.

Later that day, Mr. Tillman learned of the information about a gun being found in Kristyn's room and of Thibeaux's statement about Kristyn threatening to kill her mother. Mr. Tillman moved for a mistrial based upon the State's failure to disclose the information Detective Ortiz learned from his interview.[1] Mr. Westerchil agreed to a mistrial, and Judge Mitchell thereafter declared a mistrial.

---

[1] Detective Ortiz testified the material was omitted because he believed it to be hearsay.

**The Third Trial**

Before the third trial, Detective Ortiz prepared a supplemental report that included the information about the revolver and Kristyn's threat to kill her mother. That third trial, which was held in May 2012, resulted in Sizemore's conviction of Christopher's murder, and he was sentenced to life in prison. The conviction was affirmed on appeal. *State v. Sizemore*, 13-529, 13-530 (La. App. 3d Cir. 12/18/13), 129 So. 3d 860, *writ denied*, 14-0167 (La. 8/25/14), 147 So. 3d 699.

Both Judge Mitchell and Mr. Tillman filed disciplinary complaints against Mr. Westerchil, District Attorney Skinner, and respondent, arising from their failure to disclose the information that was omitted from Detective Ortiz's report.

**DISCIPLINARY PROCEEDINGS**

In September 2014, the ODC filed formal charges against Mr. Westerchil, who, through counsel, answered the formal charges and denied any misconduct. In December 2014, the ODC filed similar formal charges against respondent, Ronald Seastrunk, alleging he violated Rule 3.8(d) (the prosecutor in a criminal case shall make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows, or reasonably should know, either tends to negate the guilt of the accused or mitigates the offense) of the Rules of Professional Conduct. Respondent, through counsel, answered the formal charges, denying any misconduct. No formal charges were filed against District Attorney Skinner.

Prior to a formal hearing on the merits, Mr. Westerchil's matter and respondent's matter were consolidated by order of the hearing committee chair. Following the hearing but prior to the committee issuing its report, Mr. Westerchil was elected as a judge in the 30th JDC. Accordingly, the ODC ceased to have

jurisdiction over Mr. Westerchil's conduct, pursuant to Supreme Court Rule XIX, § 6(C),[2] and the formal charges against him were dismissed without prejudice.

## Formal Hearing

The hearing committee conducted the formal hearing on June 3-4, 2015. ODC introduced documentary evidence and called several witnesses to testify, including defense counsel Tony Tillman, Judge James Mitchell, Detective Ray Ortiz, District Attorney Asa Skinner, Lisa Nelson (Kristyn's appointed public defender), and Scott Westerchil. Respondent testified on his own behalf, and called one witness to testify.

## Hearing Committee Report

In concluding that respondent committed a violation of Rule 3.8(d), the committee specifically found that the information related by Detective Ortiz (concerning Kristyn's alleged gun and threat to kill her mother) represents a "troublesome issue." Mr. Westerchil questioned Kristyn at each trial about her familiarity with guns. At the first two trials, he did not ask her if she ever possessed a firearm, but at the third trial, he effectively disarmed Mr. Tillman by asking her about the gun found in her room. The hearing committee concluded that this information was pertinent because Sizemore's version of events placed him stranded along the side of the road while Kristyn committed the murder. In other words, Sizemore maintained he hit an ice chest while driving and pulled over to check the car. After he exited the car, Kristyn then jumped into the driver's seat and drove off without him to murder her husband. Detective Ortiz's information would tend to support Sizemore's version of events by demonstrating that Kristyn was more

---

[2] The Judiciary Commission of Louisiana now has jurisdiction over Mr. Westerchil, and the disciplinary board has the option of transferring its file on his alleged attorney misconduct to the Commission for further review and possible investigation as occurred in *In re: Hughes*, 03-3408 (La. 4/22/04), 874 So. 2d 746.

familiar with guns than she admitted in the first two trials. Because Kristyn denied any familiarity with guns during the first two trials, the committee determined that Detective Ortiz's information not only would have been useful for impeaching her testimony, but it might have also tended to negate Sizemore's guilt by demonstrating that Kristyn could possibly have been the shooter.

The committee noted that District Attorney Skinner ordered Mr. Westerchil not to disclose the information from Detective Ortiz to the defense. Respondent argued that he should be shielded from discipline by virtue of Rule 5.2(b) of the Rules of Professional Conduct, which provides that "[a] subordinate lawyer does not violate the Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty." The committee disagreed, determining that District Attorney Skinner's resolution was neither reasonable nor arguable. According to the committee, District Attorney Skinner's decision that such information should not be given to the defense did not logically follow from the premise that the information was hearsay because, if the defense had known about the information, it could have called as witnesses the people identified by Thibeaux as possessing firsthand knowledge of the events in question.

Based on the above findings, the committee determined respondent violated Rule 3.8(d) by failing to disclose to the defense the information procured by Detective Ortiz, noting that respondent had substantial experience as a prosecutor and that neither he nor Mr. Westerchil was principally responsible for the case. However, because principal responsibility of matters relating to Kristyn and Thibeaux fell upon Mr. Westerchil, the committee determined that, at most, respondent was negligent in his failure to disclose Detective Ortiz's information.

The committee also determined that respondent's conduct caused potential injury to the defense. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the committee determined that the baseline sanction is a public reprimand.

The committee found no aggravating factors present. In mitigation, the committee found the absence of a dishonest or selfish motive, a cooperative attitude toward the proceedings, and good character or reputation in the legal community.

Turning to the issue of an appropriate sanction, the committee cited *In re: Jordan*, 04-2397 (La. 6/29/05), 913 So. 2d 775, wherein a prosecutor withheld from the defense a statement to the police by an eyewitness to a homicide that she was not wearing her contact lenses or glasses and could only distinguish shapes. For this misconduct in *Jordan*, which resulted in the defendant's conviction being reversed on appeal, the Court imposed upon the prosecutor a three-month suspension, fully deferred.

In light of this case law, but noting that respondent and Mr. Westerchil agreed to a mistrial and that respondent was not directly responsible for cross-examining Jody, the committee recommended that respondent be publicly reprimanded.

The ODC objected to the hearing committee's report and recommendation.

**Order of the Disciplinary Board**

After review, the disciplinary board found that the hearing committee's factual findings did not appear to be manifestly erroneous. Additionally, the board found that the committee's detailed recitation of facts and chronology of events is consistent with the testimony and evidence in the record. Based on these facts, the

9

board agreed with the committee's determination that respondent violated Rule 3.8(d) of the Rules of Professional Conduct.

As a threshold matter, the board noted that the committee did not address the issue of whether respondent's failure to disclose Kristyn's inconsistent statements during Sizemore's first trial violated Rule 3.8(d), and thus, presumably the committee concluded that the ODC did not prove those allegations by clear and convincing evidence. The board agreed, noting that respondent was not present during Mr. Westerchil's interviews of Kristyn and was never in possession of Mr. Westerchil's handwritten notes which evidenced the inconsistent statements. Based on this reasoning, the board concluded that respondent did not violate Rule 3.8(d) by failing to disclose Kristyn's inconsistent statements.

Despite agreeing with the committee's legal conclusion, the board determined that the committee's legal analysis was incomplete. More specifically, the board described the issue in this matter as whether the ethical duty imposed by Rule 3.8(d) is the same as or broader than the constitutional duty imposed by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and its progeny in *United States v. Bagley*, 473 U.S. 667 (1985), 105 S.Ct. 3375, 87 L.Ed.2d 481, and *Kyles v. Whitley*, 514 U.S. 419 (1995), 115 S.Ct. 1555, 131 L.Ed.2d 490. Respondent argued that Rule 3.8(d) imposes the same duty as *Brady*, while the ODC argued that Rule 3.8(d) imposes a broader duty, thereby requiring disclosure of evidence that would not need to be disclosed under *Brady*.

Like the committee, the board found guidance from *In re: Jordan*, 04-2397 (La. 6/29/05), 913 So. 2d 775, noting that the Court's opinion in *Jordan* clearly indicates materiality will be considered when determining if Rule 3.8(d) was violated. In its analysis in *Jordan*, the Court stated, "[t]he language of Rule 3.8(d)

is recognizably similar to the prosecutor's duty set forth in *Brady* … and its progeny." *Id.* at 781. Accordingly, the board determined that, contrary to the ODC's argument, the Court's holding in *Jordan* indicates that a prosecutor's ethical obligation under Rule 3.8(d) is the same as the constitutional obligation imposed by *Brady* and its progeny.

In order to determine if respondent violated Rule 3.8(d), the board thus had to determine if the withheld evidence, that being Thibeaux's statement to Detective Ortiz, was material. The board determined that Thibeaux's statement about Kristyn possessing a gun was material and should have been disclosed to the defense. Kristyn twice stated under oath that she did not have experience with guns. The board therefore reasoned that Thibeaux's statement called into question the truthfulness of Kristyn's testimony and, because Kristyn's credibility was very important to the prosecution, any evidence negatively affecting her credibility would be material to the defense. As such, the board determined respondent violated Rule 3.8(d) by failing to disclose Thibeaux's statement.

Respondent again argued that he is shielded from a violation of Rule 3.8(d) because, under Rule 5.2(b), he reasonably relied on District Attorney Skinner's decision to not include Thibeaux's statement about the gun in Kristyn's possession in the report and to not provide the report to the defense. The board did not agree. According to the board, there was not an arguable question of professional duty under the particular facts of this matter. The board concluded the information provided by Thibeaux was material and should have been disclosed to the defense; thus, respondent was not reasonable in his reliance on District Attorney Skinner's directive to not include the information in Detective Ortiz's report and to not disclose the report to the defense.

11

The board then determined that respondent negligently violated duties owed to the public and the legal system. According to the board, respondent should have known that Thibeaux's statement impacted Kristyn's credibility and, thus, should have been disclosed to the defense. Respondent's failure to disclose the statement caused actual harm to the legal system, as it resulted in the parties agreeing to a mistrial, which, in turn, led to Sizemore going through a third trial. After considering the ABA's *Standards for Imposing Lawyer Sanctions*, the board determined that the baseline sanction is a public reprimand.

The sole aggravating factor found by the board was respondent's substantial experience in the practice of law (he was admitted in 1992). In mitigation, the board found the absence of a prior disciplinary record, the absence of a dishonest or selfish motive, timely good faith effort to make restitution or to rectify the consequences of the misconduct (agreeing to a mistrial), full and free disclosure to the disciplinary board and a cooperative attitude toward the proceedings, and good character or reputation in the legal community.

Turning to the issue of an appropriate sanction, the board again cited this Court's opinion in *Jordan*. Noting that *Jordan* involved knowing misconduct and that Mr. Jordan never took remedial action as respondent did by agreeing to a mistrial, the board determined that respondent's conduct was less egregious than Mr. Jordan's. Accordingly, the board ordered that respondent be publicly reprimanded. One board member dissented, arguing that the charges against respondent should be dismissed because "it is unfair to the respondent to issue a public reprimand and tarnish his reputation based on the charges against him."

Both parties appealed the board's ruling to this Court, and we ordered the parties to submit written briefs addressing the issue of whether the record supports

the disciplinary board's report. The matter was thereafter docketed for oral argument.

In brief to this Court, ODC asserts prosecutors, according to our holding in *Jordan*, have no discretion as a matter of ethics as to whether or not otherwise exculpatory evidence is subject to disclosure simply because that evidence may later be deemed not "outcome determinative." Thus, ODC maintains that a prosecutor's duty to disclosure exculpatory evidence is not the same as the constitutional obligation under *Brady* and its progeny. Furthermore, ODC concedes the evidence of Thibeaux's statement regarding the gun was never constitutionally material because it did not present a reasonable probability that its nondisclosure would affect the outcome of Sizemore's case. However, ODC maintains respondent was still obligated to disclose the information under Rule 3.8(d) and this Court's holding in *Jordan*. Finally, ODC asserts that a public reprimand is unduly lenient in this case, and argues that a suspension is the more appropriate sanction for respondent's conduct.

In contrast, respondent argues he had no ethical or constitutional obligation to disclose to the defense Thibeaux's statement to Detective Ortiz, as the statement was not exculpatory, it was not material, and it was withheld in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty. Respondent maintains that Thibeaux's statement was not exculpatory because it neither tended to exonerate Sizemore nor impeach Kristyn's testimony at trial. Furthermore, urging that this Court has already determined in the *Jordan* case that materiality matters under both Rule 3.8(d) and *Brady*, respondent argues the statement was not material because the defense knew about the statement during the third trial and did not utilize it. Finally, respondent states that under Rule 5.2(b) of

13

the Rules of Professional Conduct (the "safe harbor" provision), he had no ethical obligation to disclose Thibeaux's statement because District Attorney Skinner, his supervisory lawyer, determined that *Brady* did not require such a disclosure. In other words, respondent asserts that whether Thibeaux's statement was covered by *Brady* or Rule 3.8(d) is arguable; thus, District Attorney Skinner's decision not to disclose it provides a Rule 5.2(b) safe harbor to respondent. For these reasons, respondent asserts either the formal charges should be dismissed, or in the alternative, he should receive only a public reprimand.

The Louisiana District Attorneys Association ("LDAA") filed an amicus brief opposing ODC's argument that prosecutors should be subject to discipline for failing to disclose evidence that may be theoretically exculpatory even if such evidence does not meet the *Brady* threshold. The LDAA asserts that ODC's proposed "broader-than-*Brady*" rule would only create confusion, and ODC has not established that *Brady's* standard has proven inadequate. Once the requirement of materiality has been severed from Rule 3.8(d), it is no simple matter to determine whether evidence is "exculpatory" or "tends to negate the guilt of the accused or mitigates the offense." Rule 3.8(d). Creating such a rule would also impose new ethical duties upon prosecutors and subject them to unnecessary discipline.

For the reasons that follow, we agree with respondent and the LDAA, and decline to adopt the interpretation of Rule 3.8(d) offered by ODC.

## DISCUSSION

The underlying facts regarding respondent's specific conduct are not in dispute. ODC asserts the violations of Rule 3.8(d) arise out of respondent's alleged failure to disclose Kristyn's inconsistent statements during her interviews

14

throughout the investigation, as well as respondent's failure to disclose hearsay statements concerning Kristyn's possession of a gun.

This Court recognizes the paramount role of the prosecutor in our system of justice, and the vast discretion to which he is entrusted:

> Because a prosecutor is given such great power and discretion, he is also charged with a high ethical standard. A prosecutor stands as the representative of the people of the State of Louisiana. He is entrusted with upholding the integrity of the criminal justice system by ensuring that justice is served for both the victims of crimes and the accused.

*In re: Jordan*, 04-2397, p. 9 (La. 6/29/05), 913 So. 2d 775, 781, citing *In re: Toups*, 00-0634, p. 10 (La. 11/28/00), 773 So. 2d 709, 715 (internal citation omitted).

With such a solemn duty comes great responsibility. As noted by the Supreme Court in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "[s]ociety wins not only when the guilty are convicted but when criminal trials are fair; our system of the administration of justice suffers when any accused is treated unfairly." *Id.* at 87. In light of this, the United States Supreme Court set forth the duty to disclose mitigating evidence as follows:

> [S]uppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* at 87. Concerning materiality, the Supreme Court found that evidence is material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985). Furthermore, "[a] 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Id.*

In addition to *Brady*, Rule 3.8(d) of the Louisiana Rules of Professional Conduct sets forth the "Special Responsibilities of a Prosecutor." In *Jordan*, we

noted that Rule 3.8(d) is "recognizably similar" to the prosecutor's duty set forth in *Brady*. *Jordan*, 04-2397, p. 9 (La. 6/29/05), 913 So. 2d 775, 781. Rule 3.8(d) states:

> The prosecutor in a criminal case shall . . . make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows, or reasonably should know, either tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor, except when the prosecutor is relieved of this responsibility by a protective order of the tribunal.[3]

Louisiana's Code of Criminal Procedure article 723(B) also sets forth a specific duty of prosecutors, as dictated by *Brady*: "[n]otwithstanding any provision to the contrary contained herein, the state shall provide the defendant with any evidence constitutionally required to be disclosed pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny."

As mentioned, because this Court has only tangentially, and not specifically, addressed the relationship between Rule 3.8(d) and *Brady* in *In re: Jordan*, 04-2397 (La. 6/29/05), 913 So. 2d 775, we must now determine the parameters of a prosecutor's ethical duty to disclose exculpatory material under Rule 3.8(d) as compared to the duty outlined in *Brady*. *Jordan* remains the sole case in which this Court has disciplined a prosecutor for failing to turn over *Brady* evidence, and again, one which provides us limited guidance here. Significantly, in *State v. Cousin*, 96-2973 (La. 4/14/98), 710 So. 2d 1065, the underlying criminal case forming the basis for *Jordan*, this court had already made a determination that the statement at issue

---

[3] Rule 3.8(d), first adopted in 1986, and effective January 1, 1987, is modeled after the American Bar Association's rule of the same designation, with one significant change that was added in 2006. According to this Court's "Invitation to Comment" on proposed changes to 3.8(d), the 2006 amendment was at the request of the LDAA, and added the phrase "or reasonably should know" after "make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows."

*See* https://www.lasc.org/la_judicial_entities/documents/INVITATION_TO_COMMENT_RULE_3_8(d).pdf.

was "obviously" exculpatory, material to the issue of guilt, and "clearly" should have been produced to the defense."[4] Therefore, the evidence in *Jordan* would have been subject to disclosure under *Brady*. As a result, the *Jordan* Court was not required to determine whether Rule 3.8(d) created a broader duty than the constitutional one set forth in *Brady*.[5]

We reject ODC's efforts here to broaden Rule 3.8(d) beyond that which *Brady* and its progeny mandates, and specifically find that the duties outlined in 3.8(d) and *Brady* are coextensive. ODC's expansive interpretation of Rule 3.8(d) effectively removes the materiality standard enumerated by *Bagley*, *supra*.[6] When confronted with a similar question, other states have also found the disclosure obligations of professional rules are coextensive with the obligations required by *Brady*. *See In the Matter of Attorney C*, 47 P. 3d 1167 (Co. 2002) (finding Colorado version of the rule aligned with *Brady* and adopting a materiality standard to avoid imposing "inconsistent obligations upon prosecutors"); *Disciplinary Counsel v. Kellogg-*

---

[4] In a footnote, the *Cousin* court, in an opinion by Justice Lemmon, stated:

> The prosecutor did not disclose this obviously exculpatory statement to the defense prior to trial, as required by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *Kyles v. Whitley*, 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). The defense discovered this information through an anonymous communication during the trial, but after completion of the guilt phase.

*Cousin, supra* at 1066.

[5] We are aware that courts of other states have interpreted *Jordan* in different ways. In *In re: Sharon Riek*, 350 Wis. 2d 684, 834 N.W. 384 (2013), the Wisconsin Supreme Court interpreted *Jordan* as holding that the prosecutor's ethical duty was coextensive with the duty under *Brady*. In contrast, in *In re: Kline*, 113 A.2d 202 (D.C. 2015), the District of Columbia concluded that *Jordan* rejected the idea that prosecutors had a degree of discretion in determining materiality. However, we specifically note here that this Court in *Jordan* did not reach the issue we are faced with today: namely, whether the duty outlined in Rule 3.8(d) of the Louisiana Rules of Professional Conduct is broader than the duty proscribed in *Brady*.

[6] Although we recognize it is not necessarily a valid defense to the allegations against respondent, we find it worth noting that the defense, upon receiving the previously undisclosed hearsay evidence regarding the revolver, did not utilize the information during the third (and final) trial of Justin Sizemore.

17

*Martin*, 923 N.E. 2d 125 (Ohio 2010) (declining to construe Ohio version of the rule as requiring a greater scope of disclosure than *Brady* out of concern it would "threaten prosecutors with professional discipline for failing to disclose evidence even when the applicable law does not require disclosure"); *In re: Riek*, 834 N.W. 2d 384 (2013) (declining to construe Wisconsin version of rule "to impose ethical obligations on prosecutors that transcend the requirements of *Brady*" and finding that "[d]isparate standards are likely to generate confusion"); *State ex rel. Oklahoma Bar Ass'n v. Ward*, 353 P. 3d 509 (2015) (construing Oklahoma version of rule as "consistent with the scope of disclosure required by applicable law").[7] As these other courts have found,[8] under conflicting standards, prosecutors would face uncertainty as to how to proceed, as they could find themselves in compliance with the standard enumerated in *Brady*, but in potential violation of the obligation set forth in Rule 3.8(d). In finding the obligations coextensive in Rule 3.8(d) and *Brady*, we decline to impose inconsistent disclosure obligations upon prosecutors, thereby eliminating confusion.

A broader interpretation of Rule 3.8(d) also invites the use of an ethical rule as a tactical weapon in criminal litigation. We find the practical effect of this

---

[7]*But see In re Larsen*, No. 20140535, 2016 WL 3369545 (Utah June 16, 2016) (holding that the standards in *Brady* and a prosecutor's ethical obligations to disclose favorable material are "distinct"); *In re Kline*, 113 A.3d 202 (D.C. 2015) (D.C. version of the rule does not include "materiality" limitation); *Schultz v. Comm'n for the Lawyer Discipline of the State Bar of Tex.*, No. 55649, 2015 WL 9855916, at 1 (Tex. Bd. of Disciplinary App. Dec. 17, 2015) (concluding that Texas Rule 3.09(d) is "broader than *Brady*"); *In re Disciplinary Action Against Feland*, 820 N.W.2d 672 (N.D. 2012) (rejecting argument that North Dakota equivalent to NY Rule 3.8(b) is coextensive with *Brady*); *see also, e.g., Brooks v. Tenn.*, 626 F.3d 878, 892 (6th Cir. 2010) ("[T]he *Brady* standard for materiality is less demanding than the ethical obligations imposed on a prosecutor."). Similarly, the Supreme Court of Massachusetts recently amended its version of Rule 3.8 and added a comment clarifying that "[t]he obligations imposed on a prosecutor by the rules of professional conduct are not coextensive with the obligations imposed by substantive law." *See* Mass. S. Ct. Order dated Jan 7, 2016, available at www.mass.gov/courts/docs/sic/rule-changes/rule-change-sic-rule-307-january-2016.pdf.

[8] *See In re: Sharon Riek*, 350 Wis. 2d 684, 834 N.W. 384 (2013); *Disciplinary Counsel v. Kellogg-Martin*, 923 N.E. 2d 125 (Ohio 2010).

potential threat to be poor policy, and, again, decline to adopt the reasoning proffered by ODC.[9]

In light of the foregoing, we find ODC did not meet its burden of proof of clear and convincing evidence[10] to establish any violation of any Rule of Professional Conduct in this matter.[11]  We therefore dismiss all charges against respondent.

## CONCLUSION

The disclosure obligations found in Rule 3.8(d) of the Louisiana Rules of Professional Conduct and in *Brady v. Maryland* are coextensive.  For this reason, we find ODC failed to meet its burden of proof in this case and dismiss all charges against respondent.

---

[9] We also note that although ODC proposes what amounts to a rule change through judicial interpretation, this particular forum is not appropriate for such action.  Pursuant to Article V, Sections 1 and 5 of the Louisiana Constitution of 1974, and the inherent power of this Court, procedural and administrative rules are created, enacted, and amended through a diligent process dictated by this Court.  Should ODC seek to change a particular rule, it should do so through the proper channels.

[10] "Bar disciplinary matters fall within the original jurisdiction of this court.  La. Const. art. V, §5(B).  Consequently, we act as triers of fact and conduct an independent review of the record to determine whether the alleged misconduct has been proven by **clear and convincing evidence**." *In re Banks*, 09-1212, p. 10 (La. 10/2/09), 18 So.3d 57, 63 (citing *In re Quaid*, 94-1316 (La. 11/30/94), 646 So.2d 343, and *Louisiana State Bar Ass'n v. Boutall*, 597 So.2d 444 (La. 1992) (emphasis added).

[11] Respondent also argued in brief to this Court, as he did previously, that in the event we find a violation of Rule 3.8(d), he is immune from discipline under Rule 5.2(b) of the Rules of Professional Conduct, which provides that "[a] subordinate lawyer does not violate the Rules of Professional Conduct if that lawyer acts in accordance with a supervisory lawyer's reasonable resolution of an arguable question of professional duty."  Because we find ODC did not meet its burden of proof in establishing a violation of any ethical duty, we pretermit any discussion of this issue.

SUPREME COURT OF LOUISIANA

No. 2017-B-0178

IN RE:  RONALD SEASTRUNK

ATTORNEY DISCIPLINARY PROCEEDING

**JOHNSON, Chief Justice, concurs in the result.**

**10/18/17**

# SUPREME COURT OF LOUISIANA

### NO. 17-B-0178

### IN RE: RONALD SEASTRUNK

*ATTORNEY DISCIPLINARY PROCEEDINGS*

**WEIMER, J.**, concurring.

I agree that the respondent has not engaged in misconduct. I write separately from the majority to emphasize that such conclusion is supported by the plain language of Rule 3.8(d) of the Louisiana Rules of Professional Conduct.

As a preliminary, factual matter, the disciplinary board did not manifestly err in finding that the respondent lacked knowledge of Kristyn Hoffpauir's varying accounts of her husband's homicide. Therefore, the only issue remaining is whether respondent committed misconduct by failing to disclose statements concerning Kristyn's possession of a gun.

In resolving this issue, the starting point is the language of Rule 3.8, which provides:

> The prosecutor in a criminal case shall:
>
> ….
>
> (d) make timely disclosure to the defense of all evidence or information known to the prosecutor that the prosecutor knows, or reasonably should know, either tends to negate the guilt of the accused or mitigates the offense, and, in connection with sentencing, disclose to the defense and to the tribunal all unprivileged mitigating information known to the prosecutor … .

Under the plain language of the rule, a prosecutor is obligated to disclose what the prosecutor "knows" to be exculpatory information. The formal charges in this

matter do not contain an allegation that the respondent knew that a third-hand narrative[1] relating to Kristyn's sister discovering a .22 cal. revolver could be exculpatory. Indeed, from forensics, the respondent knew that Kristyn's husband was killed with a different caliber weapon.

Apart from a prosecutor "knowing" information is exculpatory, Rule 3.8(d) provides a second path for disclosure–that is for situations in which a prosecutor "should know" that information is exculpatory. However, pursuant to an amendment to Rule 3.8(d), the touchstone for when a prosecutor is tasked with predicting any given piece of information could be exculpatory is reasonableness.[2]

It is perhaps no coincidence that Rule 3.8(d) uses the term "reasonabl[e]," because the Supreme Court has restricted what has become known as the **Brady** rule by employing the same term: "evidence is material only if there is a <u>reasonable</u> probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." **United States v. Bagley**, 473 U.S. 667, 682 (1985) (emphasis added).[3]

---

[1]  According to the formal charges, a "detective … learned that … Kristyn's sister … Misty, had been present with their mother some two years earlier when they discovered a .22 cal. revolver which Kristyn had apparently stolen from her mother and concealed in her personal belongings."  Misty shared this information with her husband, who in turn shared it with a detective, who in turn provided this information to the prosecution.

[2]  In the original "Invitation to Comment," the proposal was to disclose information "that a reasonable prosecutor would know," and this court's ultimate revision of Rule 3.8 modified this wording slightly to require disclosure of what a prosecutor "reasonably should know" to be exculpatory.  <u>See</u> "Invitation to Comment" on proposed changes to Rule 3.8(d) (available at https://www.lasc.org/la_judicial_entities/documents/INVITATION_TO_COMMENT_RULE_3_8(d).pdf; <u>see also</u> Order to Amend Rule 3.8(d) of the Louisiana Rules of Professional Conduct (available at http://www.lasc.org/rules/orders/2006/Rule_3_8(d).pdf).

[3]  The **Bagley** Court began its opinion by reciting: "In **Brady v. Maryland**, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196, 10 L.Ed.2d 215 (1963), this Court held that 'the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment.'" **Bagley**, 473 U.S. at 669.

The majority of this court declares that Rule 3.8(d) is "coextensive" with the Brady rule. **In re: Ronald Seastrunk**, 2017-0178, slip op. at 17 (La. 10/ 18/17). The majority's comparison of Rule 3.8(d) to the **Brady** rule is useful, but only to a point. By its very nature, the **Brady** rule is applied with the benefit of hindsight, *i.e.*, after the trial. See **Bagley**, 473 U.S. at 682 (indicating that the materiality of exculpatory evidence is evaluated in reference to whether "the result of the proceeding would have been different.").

I fully agree with the majority that a prosecutor's responsibility in evaluating what to disclose is weighty, and the majority aptly indicates that a prosecutor has a "solemn duty" to meet "a high ethical standard." **In re: Ronald Seastrunk**, slip op. at 15. However, Rule 3.8(d) is not structured such that a prosecutor must have omniscient or clairvoyant powers to meet those demands.

Instead of requiring a prosecutor to unerringly predict the future of a trial, complete with all strategies that might be employed by the defense, Rule 3.8(d) requires a case-by-case examination of the prosecutor's conduct, primarily in the context of when it occurred. Here, a narrative to the effect that Kristyn at one time kept a .22 cal. gun was not information that the prosecutor "reasonably should know, either tends to negate the guilt of the accused or mitigates the offense." Rule 3.8(d). As noted earlier, the respondent knew Kristyn's husband was killed by a weapon of a different caliber. Should the respondent have, therefore, known that the gun possession narrative could be exculpatory? The mere fact Kristyn may have kept a gun in her closet, years before the murder, does not establish that she ever fired the gun or knew how to fire the larger caliber weapon used to kill her husband. In fact, the detective who learned of the gun possession narrative also learned from Kristyn's mother that her mother took the gun from Kristyn's closet and that Kristyn did not

3

even know how to uncock the gun. These facts do not undermine Kristyn's trial testimony that she was not familiar with guns.

In sum, too many leaping inferences would be required to transform the narrative of Kristyn keeping an unrelated gun in her closet several years before the murder, into evidence that "tends to negate the guilt of the accused or mitigates the offense." Rule 3.8(d). The prosecution actually used the gun possession narrative in the third trial, which resulted in a conviction, underscoring that the narrative was not exculpatory. Although I do not want to detract from the focus of Rule 3.8(d) being on what the prosecutor reasonably should know at the time, this court does have the unique benefit of evaluating respondent's conduct in the hindsight context of three trials, and observing that it was only the third trial, in which the gun possession narrative was adduced, that resulted in a conviction. Thus, I find from both the vantage of the circumstances before the third trial and with the benefit of hindsight (which is essentially the inquiry presented by the majority), that there was no reason the respondent "reasonably should know" that the gun narrative was exculpatory for purposes of Rule 3.8(d).

To reiterate, a prosecutor's responsibility to identify information that must be disclosed to the defense is a weighty responsibility. Fundamental fairness and due process within the criminal justice system depend on prosecutors meeting this responsibility. See **Brady**, 373 U.S. at 87 ("We now hold that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."). In a criminal case, to meet the demands of our state and federal constitutions, "[t]his means, naturally, that a prosecutor anxious about tacking too close to the wind will disclose a favorable piece of

evidence." **Kyles v. Whitley**, 514 U.S. 419, 439 (1995). Lawyer disciplinary proceedings have a related, but slightly different-set of concerns, inasmuch as "disciplinary proceedings are designed to maintain high standards of conduct, protect the public, preserve the integrity of the profession, and deter future misconduct." **In re Fahrenholtz**, 17-0261, p. 7 (La. 4/7/17), 215 So.3d 204, 208. For purposes of lawyer discipline, I find the text of Rule 3.8(d) sets a sufficiently descriptive standard for evaluating a prosecutor's conduct, requiring disclosure of what the prosecutor actually "knows" or "reasonably should know" at the time to be exculpatory material. Here, I agree with the majority that the respondent did not violate Rule 3.8(d).

**SUPREME COURT OF LOUISIANA**

**No. 2017-B-0178**

**IN RE: RONALD SEASTRUNK**

**ATTORNEY DISCIPLINARY PROCEEDING**

**Hughes, J., concurs and assigns reasons.**

I concur in the result. There were others more culpable in this case than respondent and I do not believe any discipline is appropriate.