[Cite as *State v. Hazel*, 2019-Ohio-2248.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CLARK COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2018-CA-90 |
| | : | |
| v. | : | Trial Court Case Nos. 2010-CR-808 |
| | : | 2010-CR-827 |
| MICHAEL HAZEL | : | 2010-CR-828 |
| | : | 2011-CR-49 |
| Defendant-Appellant | : | |
| | : | (Criminal Appeal from |
| | | Common Pleas Court) |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of June, 2019.

. . . . . . . . . .

JOHN M. LINTZ, Atty. Reg. No. 0097715, Clark County Prosecutor's Office, Appellate Division, 50 East Columbia Street, Suite 449, Springfield, Ohio 45502
      Attorney for Plaintiff-Appellee

MICHAEL HAZEL, #647-444, P.O. Box 5500, Chillicothe, Ohio 45601
      Defendant-Appellant, Pro Se

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Michael Hazel appeals from the denial of his "motion to vacate conviction and/or in the alternative correct or reduce the felony degree of which the defendant was convicted under pursuant to [sic] Civ.R. 60(B)(5) incorporated by Crim.R. 57(B)." For the following reasons, the trial court's judgment will be affirmed.

## I. Procedural History

{¶ 2} In 2003, Hazel was indicted for aggravated burglary, domestic violence, and intimidation of a witness; the indictment did not specify that the underlying offense for the aggravated burglary was domestic violence, nor did it specifically allege that the victim of the aggravated burglary was a family or household member. However, the victim for all counts in the 2003 case was H.K., who believed that Hazel was the father of her child.

{¶ 3} On September 10, 2003, while the 2003 case was pending, Hazel provided DNA samples for paternity testing regarding three children, one of which was H.K.'s daughter.[1] The parties agree that the paternity testing revealed that Hazel was not the father of H.K's daughter. The criminal case was resolved in October 2003 when Hazel pled guilty to aggravated burglary in violation of R.C. 2911.11(A)(1), with the remaining counts being dismissed. The court imposed an agreed three-year prison sentence.

{¶ 4} In 2009, Hazel was convicted of domestic violence in Clark County; a different person, A.S., was the victim.

{¶ 5} On November 29, 2010, Hazel was indicted for domestic violence, abduction,

---

[1] Hazel states in his motion that he has been able to obtain a copy of the test results of one of these DNA tests (Ex. 31-C), but not the results of the paternity tests for H.K.'s daughter and the third child. Exhibit 31-C indicates that Hazel's DNA sample regarding one child was collected on September 10, 2003, and the testing result is dated September 15, 2003. Hazel states in his motion that he provided the three samples on the same date and that the results for each test came back on the same date.

felonious assault, and kidnapping for incidents that occurred on November 5, 2010. (Clark C.P. No. 10CR808.)   The alleged victim was his girlfriend, M.S., and the count of domestic violence included a specification that the victim had been pregnant.   On the State's motion, the trial court subsequently consolidated this case with two other cases in which Hazel was also charged with domestic violence against M.S. (Clark C.P. Nos. 10CR827 and 10CR828), each with a specification that M.S. had been pregnant at the time of the offenses.   All of the counts of domestic violence also specified that Hazel had previously been convicted of domestic violence and of aggravated burglary involving a family or household member.   After these cases were consolidated, the State re-indicted Hazel in 2011 on three counts of felonious assault related to the events of November 5, 2010 (Clark C.P. No. 11CR49).

{¶ 6} During the trial on the consolidated cases, the State introduced the fact of the 2003 conviction through the judgment entry in the 2003 case and the testimony of the Clark County prosecutor who had prosecuted that case.   The prosecutor testified, based upon his independent recollections and his review of the 2003 case file, that Hazel had pled guilty to aggravated burglary and that "the underlying offense in that case was domestic violence, meaning that the victim was a family or household member."   (*See* Tr. at 447.)   On cross-examination, the prosecutor acknowledged that the aggravated burglary charge and the corresponding bill of particulars referenced the victim's name (H.K.), but did not identify the victim as a "family or household member."   (Tr. 450-451.) The prosecutor reiterated on additional redirect examination that domestic violence was the underlying offense for the aggravated burglary (Tr. at 452), but acknowledged on re-cross examination that the domestic violence was not identified as the underlying offense

in the indictment (Tr. at 452-453).

{¶ 7} Neither the 2003 indictment, the 2011 indictments, nor the testimony of the prosecutor clarified which definition of "family or household member" under former R.C. 2919.25(E) (now R.C. 2919.25(F)) applied such that H.K. was a "family or household member" of Hazel's. "Family or household member" includes, for example, a person living as a spouse, former R.C. 2919.25(E)(1)(a)(i), and the natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent, former R.C. 2919.25(E)(1)(b). A "person living as a spouse" includes a person who "has cohabited with the offender within five years prior to the date of the alleged commission of the act in question." Former R.C. 2919.25(E)(2).

{¶ 8} Before the case was submitted to the jury, the State conceded that it had failed to present sufficient evidence on the counts of abduction, felonious assault, and kidnapping in Case Nos. 10CR0808 and 11CR49; these counts were dismissed pursuant to Crim.R. 29. The remaining three counts of domestic violence were submitted to the jury. The jury found Hazel guilty of two counts of domestic violence and that he knew M.S. was pregnant at the time of the offenses. The jury also separately determined that Hazel had previously been convicted of aggravated burglary involving a family or household member in the 2003 case and of domestic violence in the 2009 case. The jury found Hazel not guilty of the third count of domestic violence.

{¶ 9} At sentencing, based upon the knowledge of pregnancy finding, the trial court was required to impose a prison term on both domestic violence convictions. Additionally, the jury's determination that Hazel had been convicted of aggravated burglary involving a family or household member in the 2003 case as well as domestic violence in the 2009

case made each domestic violence conviction a third-degree, as opposed to a fourth-degree, felony. R.C. 2919.25(D).[2] The trial court imposed a five-year prison term on each count and ordered the sentences to be served consecutively for a total prison term of ten years.

{¶ 10} We affirmed Hazel's conviction on direct appeal. *State v. Hazel*, 2d Dist. Clark No. 2011 CA 16, 2012-Ohio-835. Hazel sought postconviction relief, which the trial court denied. We affirmed the trial court's judgment. *State v. Hazel*, 2d Dist. Clark Nos. 2011-CA-101, 2012-CA-22, 2013-Ohio-118.

{¶ 11} In February 2016, Hazel, pro se, filed a motion in the trial court for leave to file a motion for a new trial. "Hazel's motion * * * assert[ed] that he [was] entitled to such leave because he [was] not the biological father of a child born to [H.K.], that his alleged paternity of [H.K.'s] child was used to enhance his [2011] domestic violence convictions from fourth to third degree felonies, that he was unavoidably prevented from discovery of this evidence in time to allow a timely filed motion seeking a new trial, and, as such, he should be allowed to file a motion for a new trial and, ultimately, he should be granted a new trial." *State v. Hazel*, 2d Dist. Clark No. 2017-CA-8, 2018-Ohio-766, ¶ 1. The motion was overruled. We affirmed the trial court's judgment, commenting, "Hazel does not explain how he was unavoidably prevented from obtaining the DNA test result regarding [H.K.'s] child until the February 2016 filing of his motion seeking leave to file a

---

[2] Under R.C. 2919.25(D)(3), domestic violence is a fourth-degree felony if the defendant previously has pleaded guilty to or been convicted of domestic violence or another offense identified in that subsection involving a family or household member. If the defendant previously has been convicted of two or more of those offenses, domestic violence is a felony of the third degree. R.C. 2919.25(D)(4). Aggravated burglary is an offense included under R.C. 2919.25(D)(3).

motion for a new trial. Any attempted explanation would defy logic since he participated in the 2004 [sic] paternity testing." *Id*. at ¶ 17.

**{¶ 12}** On March 12, 2018, Hazel filed a motion to compel, seeking to require LabCorp to produce documents regarding the date and result of the DNA testing performed regarding H.K.'s child. The trial court denied the motion, stating that "[t]his case is closed and time for discovery has terminated." *See State v. Hazel*, 2d Dist. Clark No. 2018-CA-39, 2018-Ohio-5274, ¶ 10. We affirmed. *Id*.

**{¶ 13}** On April 30, 2018, Hazel filed the motion at issue in this appeal, seeking the vacation of his convictions or the reduction of his offenses to fourth-degree felonies. Hazel argued that (1) the State violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it failed to disclose the results of the DNA tests and other documents to Hazel, (2) his indictments and convictions were the result of perjured testimony, in violation of *United States v. Basurto*, 497 F.2d 781 (9th Cir.1974), and (3) his trial counsel rendered ineffective assistance. The trial court found that Hazel's motion was "not well taken" and overruled it without further explanation, let alone a hearing.

**{¶ 14}** Hazel appeals from the trial court's judgment, raising four assignments of error. Hazel's first and second assignments claim that he was denied the right to due process due to violations of *Brady* and *Basurto*, respectively. His third assignment of error asserts that his trial counsel rendered ineffective assistance. His fourth assignment of error claims that the trial court abused its discretion in denying his motion without a hearing.

**II. Standard of Review**

{¶ 15} In overruling Hazel's motion, the trial court did not address the nature of Hazel's motion or the standard under which it should be reviewed. Similarly, on appeal, Hazel and the State address the merits of Hazel's arguments without discussing the nature of Hazel's motion or suggesting a standard of review.

{¶ 16} When a motion is filed subsequent to a direct appeal, claims the denial of constitutional rights, seeks to render the judgment of conviction void, and asks for vacation of the judgment and sentence, the motion is properly construed as a petition for postconviction relief. *See, e.g., State v. Reynolds*, 79 Ohio St.3d 158, 160, 679 N.E.2d 1131 (1997); *State v. Cline*, 2d Dist. Champaign No. 2013 CA 51, 2014-Ohio-4503, ¶ 7; *State v. Spencer*, 2d Dist. Clark No. 2006 CA 42, 2007-Ohio-2140, ¶ 11. Hazel's motion, although titled as a motion to vacate conviction, meets the criteria for a petition for postconviction relief, and we will construe it as such.

{¶ 17} A petition for postconviction relief "is a means by which the petitioner may present constitutional issues to the court that would otherwise be impossible to review because the evidence supporting those issues is not contained in the record of the petitioner's criminal conviction." *State v. Clark*, 2017-Ohio-120, 80 N.E.3d 1251, ¶ 14 (2d Dist.), quoting *State v. Monroe*, 2015-Ohio-844, 29 N.E.3d 391, ¶ 37 (10th Dist.). A postconviction proceeding is not an appeal from a criminal conviction; rather, it is a "civil collateral attack on a criminal judgment." *State v. Wells*, 2d Dist. Montgomery No. 22389, 2008-Ohio-4932, ¶ 11, citing *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999).

{¶ 18} We review a denial of a petition for postconviction relief for which no hearing was held under an abuse of discretion standard. *State v. Harden*, 2d Dist. Montgomery

23617, 2010-Ohio-3343, ¶ 10. An abuse of discretion occurs when the trial court's decision is unreasonable, arbitrary, or unconscionable. *State v. Turner*, 2d Dist. Montgomery No. 27350, 2017-Ohio-4101, ¶ 5, citing *State v. Jenkins*, 2d Dist. Montgomery No. 27173, 2017-Ohio-1073, ¶ 10.

{¶ 19} When a direct appeal of the judgment of conviction has been taken (as in Hazel's case), a petition for postconviction relief must be filed no later than 365 days "after the date on which the trial transcript is filed in the court of appeals in the direct appeal of the judgment of conviction or adjudication." R.C. 2953.21(A)(2). Trial courts lack jurisdiction to consider an untimely or successive petition for postconviction relief, unless the untimeliness is excused under R.C. 2953.23(A). *State v. Current*, 2d Dist. Champaign No. 2012 CA 33, 2013-Ohio-1921, ¶ 16.

{¶ 20} Pursuant to R.C. 2953.23(A)(1)(a), a defendant may not file an untimely or successive petition for postconviction relief unless (1) the defendant was unavoidably prevented from discovering the facts upon which he or she relies to present the claim, or (2) the United States Supreme Court recognizes a new federal or state right that applies retroactively to his or her situation and the petition asserts a claim based on that right. The petitioner must also show by clear and convincing evidence that, if not for the constitutional error from which he suffered, no reasonable factfinder would have found him guilty. R.C. 2953.23(A)(1)(b).

{¶ 21} "[A] criminal defendant seeking to challenge his conviction through a petition for postconviction relief is not automatically entitled to a hearing." *Calhoun*, 86 Ohio St.3d 279, 282, 714 N.E.2d 905. Rather, the court first is to decide "whether there are grounds to believe that 'there was such a denial or infringement of the person's rights as

to render the judgment void or voidable under the Ohio Constitution or the Constitution of the United States.' " *Id.* at 283, quoting R.C. 2953.21(A)(1). Thus, in order to be entitled to a hearing, Hazel bore the initial burden to provide evidentiary materials containing sufficient operative facts to demonstrate a claim of constitutional error. *State v. Wood*, 2d Dist. Clark No. 2018-CA-1, 2018-Ohio-3204, ¶ 23, citing *State v. Kapper*, 5 Ohio St.3d 36, 38-39, 448 N.E.2d 823 (1983).

### III. Review of Hazel's Petition

{¶ 22} Hazel's petition for postconviction relief was both successive and untimely. Hazel filed a direct appeal of his convictions, and the trial transcripts were filed with the appellate court on June 14, 2011. Hazel filed a timely petition for postconviction relief on October 27, 2011. On February 27, 2012, after his petition for postconviction relief was overruled by the trial court, Hazel filed a motion to vacate a void judgment, which was also overruled. In a consolidated appeal, we affirmed the trial court's judgments on the petition and the motion. *Hazel*, 2d Dist. Clark Nos. 2011-CA-101, 2012-CA-22, 2013-Ohio-118. Hazel filed the present "motion to vacate his conviction and/or to correct or reduce the degree of his offenses" on April 30, 2018, almost seven years after the filing of the trial transcript, and he previously had sought postconviction relief.

{¶ 23} Hazel has not argued, much less demonstrated, that the untimeliness of his petition should be excused pursuant to R.C. 2953.23(A)(1)(a). Hazel's motion indicates that the facts upon which he relies – the existence of a DNA test that establishes that he is not the biological father of H.K.'s child – were known to Hazel prior to the 2011 trial. Accordingly, Hazel has not shown that he was unavoidably prevented from discovering the facts upon which he relies to present his claims.

{¶ 24} Moreover, Hazel has not established that he could not have raised the arguments presented in his 2018 motion in his prior petitions/motions for postconviction relief. "Pursuant to the doctrine of res judicata, a valid final judgment on the merits bars all subsequent actions based on any claim arising out of the transaction or occurrence that was the subject matter of the previous action." *State v. Collins*, 2d Dist. Montgomery No. 25612, 2013-Ohio-3645, ¶ 9, citing *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 653 N.E.2d 226 (1995). Res judicata applies to any claim that was raised or could have been raised in a prior petition for postconviction relief. *E.g., State v. Dixon*, 2d Dist. Montgomery No. 27991, 2019-Ohio-230, ¶ 18; *State v. McCain*, 2d Dist. Montgomery No. 27195, 2017-Ohio-7518, ¶ 35 ("res judicata applies to bar raising piecemeal claims in successive post-conviction relief petitions * * * that could have been raised, but were not, in the first post-conviction relief petition").

{¶ 25} Even if we were to consider the merits of Hazel's petition, we would agree with the trial court that Hazel's petition lacks merit.

{¶ 26} First, Hazel claims that the State failed to disclose evidence in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. *Brady* held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Disciplinary Counsel v. Kellogg-Martin*, 124 Ohio St.3d 415, 2010-Ohio-282, 923 N.E.2d 125, ¶ 24, citing *Brady*, at 87.

{¶ 27} In order to establish a *Brady* violation, the defendant must demonstrate that (1) the prosecution failed to disclose evidence upon request; (2) the evidence was

favorable to the defendant; and (3) the evidence was material. *State v. Wade*, 2d Dist. Clark No. 06-CA-108, 2007-Ohio-6611, ¶ 12. Evidence suppressed by the State "shall be deemed material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *State v. Aldridge*, 120 Ohio App.3d 122, 145, 697 N.E.2d 228 (2d Dist.1997), quoting *State v. Johnston*, 39 Ohio St.3d 48, 529 N.E.2d 898 (1988), paragraph five of the syllabus. Evidence must be both favorable and material before disclosure is required, and favorable evidence under *Brady* encompasses both exculpatory and impeachment evidence. *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 338.

{¶ 28} The defendant bears the burden of proving that evidence was materially exculpatory. *State v. Pickens*, 141 Ohio St.3d 462, 2014-Ohio-5445, 25 N.E.3d 1023, ¶ 102; *State v. Bendolph*, 2018-Ohio-1729, 111 N.E.3d 872, ¶ 46 (2d Dist.).

{¶ 29} "The rule in *Brady* only applies to evidence unknown to the defendant at the time of the trial." *State v. Royster*, 2d Dist. Montgomery No. 26378, 2015-Ohio-625, ¶ 17. And, "[e]ven where information may be exculpatory, '[n]o due process violation occurs as long as *Brady* material is disclosed to a defendant in time for its effective use at trial.' " (Citation omitted.) *State v. Iacona*, 93 Ohio St.3d 83, 100, 752 N.E.2d 937 (2001).

{¶ 30} Hazel claims that the State was aware of, but did not disclose, certain documents to him. Specifically, Hazel states that individuals entered and exited the Clark County Jail to obtain the DNA samples from him, and the State should have provided jail records of their entry and exit. Hazel further states that the State should have provided the result of his DNA paternity test regarding H.K.'s child.

**{¶ 31}** We find no basis to conclude that the alleged undisclosed evidence was material. Although the jail records may substantiate that certain individuals came to the jail, they would provide no information regarding the paternity of H.K.'s child. With respect to the report of the DNA test results, we addressed and rejected Hazel's argument in a prior appeal. We reasoned:

> While the record indicates that Hazel was personally aware of the DNA testing at the time of the 2011 trial, there is no evidence in this record that the State had possession of the test results or that the State had any knowledge that such testing had been conducted. *Hazel*, 2d Dist. Clark No. 2017-CA-8, 2018-Ohio-766, ¶ 17; *Hazel*, S.D.Ohio No. 3:13-CV-332 2014 WL 4076152, *28. Thus, we have no basis upon which to conclude that the State committed a *Brady* violation.

> Further, even had the State been aware of the testing, we cannot say that the evidence was material. As we have previously noted with regard to the 2003 conviction, the domestic violence statute did not require the State to prove Hazel was actually the father of H.K.'s child. Instead, the statute permitted the State to submit proof that he was the putative father.[3] The statute also sets forth various other definitions of family or household member. R.C. 2919.25(F).

---

[3] "A putative father is defined as a man who may be a child's father and: 1) is not married to the mother at birth or conception; 2) has not adopted the child; 3) whom no court or government agency has determined to have a parent/child relationship with the child; and, 4) has not acknowledged paternity of the child." *In re K.M.S.*, 2d Dist. Miami No. 05CA17, 2005-Ohio-4739, ¶ 7, citing R.C. 3107.01(H). *See also Black's Law Dictionary* 648 (5th Ed. 1983) (defining a putative father as "the alleged or reputed father of" a child).

In any event, "the State was not obliged to prove and did not undertake to prove that Hazel was the natural father of [H.K.'s child]. Instead, it had only to prove that he was convicted of aggravated burglary where the underlying offense was committed against a family or household member. It succeeded in doing that by proving that the underlying offense was domestic violence, that [H.K.] was named in the bill of particulars, and that Hazel pled guilty under those circumstances. Having pled guilty, he waived his opportunity to put the State to its proof of the underlying domestic violence offense." *Hazel*, S.D.Ohio No. 3:13-CV-332, 2014 WL 4076152, *28.

(Footnote in original as fn. 2.) *Hazel*, 2d Dist. Clark No. 2018-CA-39, 2018-Ohio-5274, at ¶ 18-20. Accordingly, Hazel's *Brady* argument lacks merit.

{¶ 32} Second, Hazel argues that his indictments and convictions were based on perjured testimony, because the prosecutor who testified about Hazel's 2003 conviction knew that Hazel was not the father of H.K.'s child. Hazel relies on the Ninth Circuit's decision in *United States v. Basurto*, 497 F.2d 781 (9th Cir.1974).

{¶ 33} In *Basurto*, the Ninth Circuit held: "[T]he Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached. Whenever the prosecutor learns of any perjury committed before the grand jury, he is under a duty to immediately inform the court and opposing counsel — and, if the perjury may be material, also the grand jury — in order that appropriate action may be taken." *Id.* at 785-786.

**{¶ 34}** Hazel argues that the R.C. 2919.25(D)(4) allegations in the 2010 indictments were based on the prosecutor's testimony before the grand jury in 2003. He further argues that the jury's findings in 2011 regarding those allegations were based on that same prosecutor's trial testimony.

**{¶ 35}** Hazel's *Basurto* argument fails for similar reasons as his *Brady* argument. At the time of aggravated burglary offense, Hazel was the putative father of H.K.'s child.[4] The domestic violence statute defined a "family or household member" as including "[t]he natural parent of any child of whom the offender is the other natural parent *or is the putative other natural parent.*" (Emphasis added.) Former R.C. 2919.25(E)(1)(b), now R.C. 2919.25(F)(1)(b). Thus, when Hazel committed the aggravated burglary, H.K. was a family or household member due to Hazel's status as the putative father of her child. Hazel's subsequent knowledge that he was not the biological parent of H.K.'s child did not change the status of the parties as of the time that the aggravated burglary offense was committed. Accordingly, Hazel has not demonstrated that the prosecutor committed perjury when he testified that Hazel's 2003 conviction involved a family or household member.

**{¶ 36}** Third, Hazel claims that his 2011 trial attorney rendered ineffective assistance by failing to conduct a complete investigation and to file a motion to suppress. Hazel argues that his attorney should have questioned H.K. at a motion to suppress hearing about the paternity test and should have asked the 2003 prosecutor "to explain

---

[4] It is unclear from this record whether H.K. and Hazel were cohabitating or had cohabitated within five years prior to the commission of the aggravated burglary offense, such that H.K. was also a "family or household member" as a "person living as a spouse" under former R.C. 2919.25(E)(1)(a)(i).

how [H.K.] was supposed to be Mr. Hazel's family or household member."

**{¶ 37}** To establish ineffective assistance of counsel, a defendant must demonstrate both that trial counsel's conduct fell below an objective standard of reasonableness and that the errors were serious enough to create a reasonable probability that, but for the errors, the outcome of the case would have been different. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 141-142, 538 N.E.2d 373 (1989). Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. *State v. Cook*, 65 Ohio St.3d 516, 524-525, 605 N.E.2d 70 (1992); *State v. Fields*, 2017-Ohio-400, 84 N.E.3d 193, ¶ 38 (2d Dist.). Trial counsel is also entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. *Strickland* at 689.

**{¶ 38}** Even if we were to address this claim, we would find no support for Hazel's claim of ineffective assistance of counsel. As stated above, whether Hazel's 2003 conviction for aggravated burglary involved a family or household member did not depend on whether Hazel was, in fact, the biological father of H.K.'s child. Accordingly, Hazel has not demonstrated that the outcome of his trial with respect to the R.C. 2919.25 allegations would have been different but for counsel's alleged errors.

**{¶ 39}** Finally, Hazel claims that the trial court abused its discretion by failing to address the merits of his motion/petition and denying him a hearing. For the reasons stated above, we conclude that the trial court did not abuse its discretion by denying Hazel's petition without a hearing.

## IV. Conclusion

**{¶ 40}** The trial court's judgment will be affirmed.

. . . . . . . . . . . . .

HALL, J. and TUCKER, J., concur.

Copies sent to:

John M. Lintz
Michael Hazel
Hon. Douglas M. Rastatter