Per Curiam.
{¶ 1} Respondent, Kimberly J. Kellogg-Martin of Bellefontaine, Ohio, Attorney Registration No. 0022083, was admitted to the practice of law in Ohio in 1984. *416 The Board of Commissioners on Grievances and Discipline found that respondent had violated the former Code of Professional Responsibility by failing to disclose, and by making false statements about, potentially exculpatory or mitigating evidence during a criminal prosecution. The board recommends that we suspend respondent from practice for one year, but conditionally stay the last six months of the suspension. Respondent objects to the board’s findings and recommendation. Because we find that several objections have merit and that respondent’s acts and omissions did not constitute professional misconduct, we dismiss the complaint.
The Disciplinary Proceedings against Respondent
{¶ 2} Relator, the Disciplinary Counsel, charged respondent in a single-count complaint with violating DR 1 — 102(A)(4) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (prohibiting a lawyer from engaging in conduct prejudicial to the administration of justice), 7-102(A)(3) (prohibiting a lawyer, in the representation of a client, from concealing or knowingly failing to disclose that which she is required by law to reveal), and 7-103(B) (requiring a prosecutor to make timely disclosure to defense counsel of the existence of evidence known to the prosecutor that tends to negate the guilt of the accused, mitigates the degree of the offense, or reduces the punishment). A panel of the board heard the case, including the parties’ stipulations, and found the disciplinary violations alleged in the complaint. The panel recommended a six-month suspension with the entire six months to be stayed. The board adopted the panel’s findings of fact and conclusions of law, but recommended a one-year suspension with six months stayed.
{¶ 3} The following facts were established at the disciplinary hearing:
{¶ 4} Respondent was the chief assistant prosecuting attorney of Logan County. In 2002, she was assigned to prosecute criminal charges against Joshua Giles. These charges were based upon a young girl’s allegations that Giles had forced her to have sex on two separate occasions.
{¶ 5} In June 2002, the victim, then 14 years old, was in counseling for behavioral problems. During a counseling session, she told her therapist that Giles had twice pressured her into sexual intercourse. Her therapist reported the allegation, as is required by statute.
{¶ 6} On June 12, 2002, Jo Ann Dorsey, a Logan County Children Services (“LCCS”) social worker, interviewed the victim. Later that day, Dorsey wrote a narrative report of the interview (“the Dorsey report”). According to the Dorsey report, with respect to the crucial fact of the victim’s age, the victim stated that the first rape had been committed at the home of a friend of the victim in August 2001 and that the second rape had been committed at the residence of one *417 “Haddy” in September 2001. The victim’s date of birth was January 21, 1988. Thus, Dorsey’s initial account of the victim’s statements implied that the victim was 13 years old at the time she was raped. On July 19, 2002, however, Dorsey filled out a form called the “Family Risk Assessment Matrix.” On this form, Dorsey stated that the victim “reported she was raped by a 21 year old man when she was 12 years old.”
{¶ 7} On June 13, 2002, Dorsey faxed a copy of her report to Detective Sergeant Jeff Cooper in the Logan County Sheriffs Office. Cooper interviewed Giles the same day, and Giles admitted having sex with the victim at her friend’s house. Giles said this had happened a “very long” time ago, around the “[e]nd of 2000.”
{¶ 8} Cooper and another officer interviewed the victim on July 3, 2002. According to Cooper’s narrative report (“the Cooper report”), the victim told the officers that “she had intercourse with [Giles] on two occasions * * * when she was twelve years old.” The Cooper report also states that the victim “stated that she did not tell [Giles] to stop or try to fight him during the incidents of intercourse.”
{¶ 9} The discrepancy between Dorsey’s June 12 report that the victim was 13 and the other information that she was 12 prompted respondent to seek further confirmation of the victim’s age before filing criminal charges. Respondent therefore interviewed the victim personally. During the interview, the victim stated that before one of the rapes, she had informed Giles that she was 12. The victim also told respondent that she had been in a snowmobile accident and that the rapes had occurred the summer before that accident. After the interview, respondent checked the victim’s hospital records. These confirmed that the snowmobile accident had taken place in December 2000.
{¶ 10} Respondent also interviewed the victim’s mother. From this interview, respondent learned that the victim had told her mother about being raped. The victim’s mother told respondent that the victim had been 12 at the time of that conversation.
{¶ 11} On August 28, 2002, the victim told her therapist that one of the sexual acts had occurred on a Labor Day weekend “when she was 12.”
{¶ 12} Giles was ultimately indicted on four counts of raping a person under the age of 13, R.C. 2907.02(A)(1)(b), and two counts of raping a person under the age of 13 by force or threat of force, R.C. 2907.02(A)(1)(b) and 2907.02(A)(2). Each of these charges required the prosecution to prove that the victim was younger than 13 at the time of the alleged rapes.
{¶ 13} After Giles was indicted, his attorney filed a discovery demand requesting, inter alia, “all evidence, known or which may become known to the Prosecut *418 ing Attorney, favorable to defendant, and material either to the guilt or innocence of the defendant.” Respondent did not provide defense counsel with copies of either the Dorsey report regarding the age statement or the Cooper report concerning consent. Respondent later testified that she believed she did not have a duty under Crim.R. 16 or Brady v. Maryland (1963), 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215, to turn these reports over to the defense.
{¶ 14} On September 23, 2002, respondent filed a bill of particulars in the Giles prosecution. The bill contained the following statement: “The victim was interviewed by Joanie Dorsey of Logan County Children’s Services on June 12, 2002. She reported that the Defendant raped her on two occasions over the summer of 2000.”
{¶ 15} On December 18, 2002, Giles entered a plea of guilty to a reduced charge of unlawful sexual conduct with a minor, R.C. 2907.04(A). At the hearing, respondent delivered a statement of what “[t]he State’s evidence in this case would show.” During this statement, respondent said: “The victim was interviewed by Joanie Dorsey of the Logan County Children’s Services on June 12, 2002. She reported what had taken place over the year of 2000.”
{¶ 16} The board found that respondent had violated DR 7-103(B) and 7-102(A)(3) by failing to disclose the Dorsey and Cooper reports to the defense before Giles entered his guilty plea. The board further found that respondent’s nondisclosure of the reports was prejudicial to the administration of justice and thus violated DR 1-102(A)(5). Finally, the board found that respondent’s statements in the bill of particulars and the plea hearing were false and therefore violated DR 1-102(A)(4).
Respondent’s Objections to the Board’s Report
{¶ 17} Respondent has filed seven objections to the board’s report and recommendations. Her first five objections challenge the board’s findings that she violated DR 7-103(B), 7-102(A)(3), and 1-102(A)(5) by failing to disclose the Dorsey and Cooper reports. Her sixth challenges the board’s finding that she made false statements to the trial court in violation of DR 1~102(A)(4). Her seventh challenges the sanction recommended by the board. We begin our analysis with the issues raised by respondent’s nondisclosure of the reports.

Nondisclosure of the Dorsey and Cooper Reports

{¶ 18} DR 7-103(B) provides: “A public prosecutor or other government lawyer in criminal litigation shall make timely disclosure to counsel for the defendant, or to the defendant if he has no counsel, of the existence of evidence, known to the prosecutor or other government lawyer, that tends to negate the guilt of the accused, mitigate the degree of the offense, or reduce the punishment.”
*419 {¶ 19} Respondent’s first two objections are related. In her first objection, she argues: “It cannot be the intent of the Code of Professional Responsibility * * * that a prosecutor’s ethical duties are broader than her legal duties.” Therefore, she contends, a prosecutor cannot violate DR 7-103(B) by failing to disclose evidence unless her failure to disclose also constitutes a violation of Crim.R. 16 or of Brady v. Maryland, supra. In her second objection, respondent contends that she had no legal duty to disclose the Dorsey and Cooper reports to the defense and hence that she committed no violation of DR 7-103(B) by failing to disclose them.
{¶ 20} Relator, on the other hand, contends that we should read DR 7-103(B) broadly, to require disclosure of evidence irrespective of whether its disclosure is legally required or not. Relator further contends that even if we reject relator’s interpretation of DR 7-103(B), respondent’s failure to disclose the reports did in fact violate Brady and Crim.R. 16 and therefore still constituted a violation of DR 7-103(B).
{¶ 21} We decline to construe DR 7-103(B) as requiring a greater scope of disclosure than Brady and Crim.R. 16 require. Relator’s broad interpretation of DR 7 — 103(B) would threaten prosecutors with professional discipline for failing to disclose evidence even when the applicable law does not require disclosure. This holding would in effect expand the scope of discovery currently required of prosecutors in criminal cases.
{¶ 22} For this reason, we hold that DR 7-103(B) imposes no requirement on a prosecutor to disclose information that he or she is not required to disclose by applicable law, such as Brady v. Maryland or Crim.R. 16. Accordingly, we sustain respondent’s first objection.
{¶ 23} In respondent’s second objection, she contends that she had no duty to disclose the Dorsey and Cooper reports to the defense. Therefore, she contends, her failure to do so did not violate DR 7-103(B). In the circumstances of this case, we agree with respondent’s contention that she had no duty to disclose the reports.
{¶ 24} In Brady v. Maryland, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to an accused upon request violates due process when the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. 373 U.S. at 87, 83 S.Ct. 1194, 10 L.Ed.2d 215. Likewise, Crim.R. 16(B)(1)(f) requires that a prosecutor disclose to counsel for the defendant all evidence, known or which may become known to the prosecuting attorney, favorable to the defendant and material either to guilt or punishment.
{¶ 25} However, in United States v. Ruiz (2002), 536 U.S. 622, 633, 122 S.Ct. 2450, 153 L.Ed.2d 586, the United States Supreme Court held that “the Constitu *420 tion does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant.”
{¶ 26} The Dorsey and Cooper reports constituted impeachment evidence. Had the case against Giles gone to trial, the defense could not have introduced the victim’s out-of-court statements to Dorsey and Cooper to prove the truth of the matters asserted in those statements (i.e., that the rapes occurred in 2001 or that the victim did not offer resistance). See generally Evid.R. 801(C) and 802. Thus, the defense could have used the victim’s statements only to impeach her testimony at trial with respect to these matters. See generally Evid.R. 613 (impeachment by self-contradiction).
{¶ 27} Relator’s efforts to distinguish Ruiz are unpersuasive. Relator argues that “the focus in this case is not on the validity of Giles’ plea agreement, the focus is on evidence withheld by respondent before Giles decided to plead guilty.” (Emphasis sic.) Relator’s observation is true, but irrelevant. This case is indeed about the “evidence withheld by respondent.” But the question before us is whether respondent had any obligation to disclose that evidence before Giles entered his guilty plea. Ruiz answers that question in the negative.
{¶ 28} Next, relator points out that Giles, unlike the defendant in Ruiz, “was not asked to sign any type of waiver of his right to receive ‘impeachment information relating to any informants or other witnesses’ in exchange for favorable sentencing.” It is true that the defendant in Ruiz was asked to specifically waive the right to receive impeachment information. That is, he was offered a plea bargain whose terms included a specific waiver of the right to receive impeachment information. But relator omits one critical fact: the defendant in Ruiz refused that bargain and later pleaded guilty without making any such specific waiver. 536 U.S. at 625-626, 122 S.Ct. 2450, 153 L.Ed.2d 586. The only waiver the defendant actually made in Ruiz was the same waiver that any criminal defendant — including Giles — necessarily makes by pleading guilty: “When a defendant pleads guilty he or she, of course, forgoes not only a fair trial, but also other accompanying constitutional guarantees.” Ruiz, 536 U.S. at 628-629, 122 S.Ct. 2450, 153 L.Ed.2d 586.
{¶ 29} Ruiz plainly holds that the state is not required to disclose impeachment evidence to a defendant before the defendant pleads guilty. Because Giles entered a guilty plea and never went to trial, respondent had no obligation to disclose the Dorsey and Cooper reports to him. We must therefore sustain respondent’s second objection.
{¶ 30} As we find that respondent did not violate DR 7-103(B), we need not determine whether, as she contends in her third objection, a finding of willfulness is a prerequisite to a finding of a DR 7-103(B) violation. Respondent’s third objection is moot.
*421 {¶ 31} Respondent’s fourth objection challenges the board’s finding that nondisclosure of the reports violated DR 7-102(A)(3). DR 7-102(A)(3) prohibits a lawyer’s failure to disclose information that she is required by law to reveal. Under Ruiz, respondent had no obligation to disclose the Dorsey and Cooper reports to the defense. Accordingly, we sustain respondent’s fourth objection.
{¶ 32} Respondent’s fifth objection challenges the board’s finding that respondent engaged in conduct prejudicial to the administration of justice in violation of DR 1-102(A)(5). In finding that respondent violated DR 1-102(A)(5), the board relied on the same evidence and analysis that underlay its findings that respondent violated DR 7-103(B) and 7-102(A)(3). Having rejected those findings, we must also reject the finding that respondent violated DR 1-102(A)(5). We therefore sustain respondent’s fifth objection.
{¶ 33} Our decision today should not be construed as an endorsement of respondent’s nondisclosure of the reports. “Because we are dealing with an inevitably imprecise standard, and because the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.” United States v. Agurs (1976), 427 U.S. 97, 108, 96 S.Ct. 2392, 49 L.Ed.2d 342. Nevertheless, we conclude that nondisclosure of the reports at issue here did not violate any Disciplinary Rule.-

The Claim that Respondent Made False Statements

{¶ 34} In her sixth objection, respondent challenges the board’s conclusion that she violated DR 1-102(A)(4). The board’s conclusion was based on two statements respondent made in connection with the prosecution of Giles. First, the bill of particulars filed by respondent on September 23, 2002 states: “The victim was interviewed by Joanie Dorsey of Logan County Children’s Services on June 12, 2002. She reported that the Defendant raped her on two occasions over the summer of2000.” (Emphasis added.)
{¶ 35} Second, at the plea hearing on December 18, 2002, respondent stated in open court: “The victim was interviewed by Joanie Dorsey of the Logan County Children’s Services on June 12, 2002. She reported what had taken place over the year of2000.”
{¶ 36} Relator contends that both statements were false, in that they misrepresented what the victim actually reported to Dorsey on June 12, 2002. Relator further contends that the alleged falsehoods must have been intentional, inasmuch as respondent was in possession of Dorsey’s June 12, 2002 report stating that the victim had placed the sex acts in 2001.
{¶ 37} We find that relator has failed to prove that respondent’s statements in the bill of particulars and at the sentencing hearing were false. It is true that *422 Dorsey’s narrative report of June 12, 2002, is inconsistent with respondent’s statements. The Dorsey report states that the victim, when asked whether she had been raped “last year,” i.e., in 2001, said yes and that the victim “reports the first rape occurred in August 2001.” But respondent’s statements were not representations about what Dorsey’s report said. They were representations about what the victim said to Dorsey on June 12, 2002. And the June 12 Dorsey report is not the only version of what the victim told Dorsey on that date.
{¶ 38} On June 19, 2002, Dorsey completed a “Family Risk Assessment Matrix” form for the victim. Dorsey wrote on this form that the victim “reported she was raped by a 21 year old man when she was 12 years old.” (Emphasis added.) In the absence of any evidence that Dorsey interviewed the victim at any time other than June 12, 2002, we must conclude that the statement on the June 19 risk-assessment form refers to the victim’s statements to Dorsey on June 12.
{¶ 39} Thus, if Dorsey’s statement on the June 19 risk-assessment form is correct, then so were respondent’s statements about what the victim reported to Dorsey on June 12, 2002. Relator, who has the burden of persuasion, cites no evidence that supports Dorsey’s June 12 version of the victim’s statement as opposed to her June 19 version. Nor does the board’s report cite any such evidence.
{¶ 40} Indeed, the evidence points the other way. The victim told her mother, her therapist, and Sergeant Cooper that she was 12 at the time of the alleged rapes. Respondent determined that further investigation was needed, so she interviewed the victim herself. Yet again, the victim’s account indicated that she was 12 when Giles raped her.
{¶ 41} Given that all the victim’s other statements were consistent as to when she was raped, we find it more likely than not that the June 19 risk-assessment form, and not the earlier Dorsey report, accurately reflected what the victim told Dorsey on June 12, 2002.
{¶ 42} In sum, we find that respondent did not, either in the September 23, 2002 bill of particulars or during the December 18, 2002 plea hearing, engage in conduct involving dishonesty, fraud, deceit, or misrepresentation. We therefore conclude that respondent did not violate DR 1-102(A)(4), and we accordingly sustain respondent’s sixth objection.

The Proposed Sanction

{¶ 43} Respondent’s seventh objection is to the sanction recommended by the board. However, as relator has failed to prove any misconduct, this objection is moot.
*423 Conclusion
{¶ 44} We find that relator has failed to establish that respondent violated the Disciplinary Rules she was charged with violating. Accordingly, we dismiss relator’s complaint.
Judgment accordingly.
Pfeifer, Lundberg Stratton, O’Connor, O’Donnell, Lanzinger, and Cupp, JJ., concur.
Moyer, C.J., dissents.