[Cite as *State v. Artuso*, 2022-Ohio-3283.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | **CASE NO. 2022-A-0009** |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| JOHN F. ARTUSO, | Trial Court No. 2018 CR 00356 |
| Defendant-Appellant. | |

# O P I N I O N

Decided: September 19, 2022
Judgment: Affirmed

*Colleen M. O'Toole*, Ashtabula County Prosecutor, and *Shelley M. Pratt*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Joseph F. Scott* and *Ryan A. Winters*, Scott & Winters Law Firm, LLC, The Caxton Building, 812 Huron Road E., Suite 490, Cleveland, OH 44115 (For Defendant-Appellant).

MATT LYNCH, J.

{¶1} Defendant-appellant, John F. Artuso, appeals the denial of his Motion to Vacate Plea by the Ashtabula County Court of Common Pleas. For the following reasons, we affirm the decision of the court below.

{¶2} On May 24, 2018, the Ashtabula County Grand Jury indicted Artuso on one count of Theft in Office, a felony of the third degree in violation of R.C. 2921.41(A)(1), and one count of Grand Theft, a felony of the fourth degree in violation of R.C. 2913.02(A)(1) and (B)(2). The charges arose from allegations that Artuso, through his office of housing

inspector, stole money in excess of $7,500 and less than $150,000 from a vacant home intended for demolition.

{¶3} On December 3, 2018, Artuso entered a plea of "no contest" to Grand Theft and the Theft in Office charge was dismissed. The trial court sentenced Artuso to two years of Community Control/Intensive Supervision.

{¶4} On January 4, 2021, Artuso was discharged from the supervision of the Adult Probation Department.

{¶5} On January 20, 2021, Artuso filed a Motion to Vacate Plea on the grounds that he was "possessed of newly discovered evidence" which "establishes an infringement and denial of [his] constitutional rights under the U.S. and Ohio constitutions." Specifically, it was claimed: "Investigators involved in the prosecution secured search warrants with false affidavits, unlawfully seized evidence, and were guilty of related acts of perjury. The Ashtabula police department withheld critical information directly impacting the credibility of its lead investigator, former-detective William Felt."

{¶6} A hearing on the Motion to Vacate Plea was held on January 19, 2022. The following evidence in support of the Motion consists of the transcript of the hearing, depositions taken in the case of *Artuso v. Felt*, N.D.Ohio No. 1:19-cv-01798, and documents filed with the trial court.

{¶7} At all times relevant herein, Felt was a detective with the Ashtabula Police Department. The detective bureau had four detectives and investigations were not assigned exclusively to any single detective. Since about 2015-2016, Artuso was the subject of several police investigations. The initial investigation concerned solicitation in the course of his duties as housing inspector for the City of Ashtabula. Felt's involvement

2

with this investigation was minimal. In 2017, Artuso was investigated regarding an allegation of funds being taken from an abandoned building (the underlying charges in the present case). Subsequently, Artuso also became the subject of a sexual assault allegation. Felt could be considered the lead or primary investigator with respect to the theft and sexual assault allegations inasmuch as he performed the majority of the work in those investigations.

{¶8} On December 13, 2017, Felt executed an Affidavit for Search Warrant with respect to the theft allegations. The Affidavit contained the following paragraph denominated "**Background Information**":

> Over the course of the last 2 years, your Affiant [Felt] has been tasked with a confidential, undercover internal investigation involving a City of Ashtabula employee named JOHN F. ARTUSO. John ARTUSO has been involved in proven criminal activity for Solicitation of prostitutes while on duty for the City of Ashtabula. John ARTUSO has also been alleged to be involved in Public Corruption as the Housing Inspector for taking cash payments from renters of households so that the residences can pass a housing inspection.

Contrary to these representations, Felt subsequently conceded that he was not involved in a two-year undercover investigation of Artuso regarding solicitation and that there was no proven criminal activity involving Artuso either with respect to solicitation or public corruption.

{¶9} The Search Warrant Affidavit also described the discovery of $260,000 in a residence on West Avenue in Ashtabula. According to one witness (Darnetta Bennett), some of this money was taken by Harrison Brown who, in turn, gave $30,000 to Jashon Hunt. According to an interview with Hunt, he received $10,000 from Artuso while inside the structure on West Avenue. When Felt testified before the grand jury in the present case, *State v. Artuso*, Ashtabula C.P. No. 2018-CR-00356, he stated, contrary to the

3

information received from Bennett, that Hunt received money directly from Artuso. Subsequently, Felt expressed uncertainty as to whether Hunt actually obtained the money directly from Artuso.

{¶10} In the course of investigating the alleged sexual assault, the Ashtabula Police Department obtained Artuso's work and cell phone records. These records were at variance with the allegations of sexual assault and tended to exonerate Artuso of misconduct. The receipt of these records was documented in a supplemental investigative report or narrative prepared by Detective Douglas Hollis and dated December 20, 2017. When Felt delivered the investigative file to the county prosecutor (Nicholas Iarocci) in January 2018, it did not include Hollis' supplemental report memorializing the receipt of the work and cell phone records.

{¶11} On January 30, 2018, Felt testified before the grand jury regarding the sexual assault allegations. At the hearing, Felt stated that "Artuso did not produce any documents to even assert that he was present for the rental inspection, basically didn't go through whatever steps is [sic] necessary in his position to do a report or document anything that he was present at the apartment for." One of the jurors asked Felt, "If this guy's an inspector, * * * he fills out documentation when he does these inspections. On this particular day, there was no documentation with his name on it?" Felt answered, "My understanding is that he does and sometimes does not document his inspections as he should, according to his boss."

{¶12} Artuso was subsequently indicted on charges of Rape, Kidnapping, and Sexual Battery in *State v. Artuso*, Ashtabula C.P. No. 2018 CR 00061. Following a jury trial, Artuso was acquitted of all charges. Iarocci, the prosecutor in Case No. 2018 CR

4

00061, testified that it was his practice to present all relevant evidence before the grand jury and that this should have included the work and cell phone records. He also testified that these records were available to both the prosecution and the defense prior to trial. Iarocci believed that an indictment would have still been obtained had the records been presented to the grand jury and that Artuso's prosecution was justified. Ashtabula Chief of Police, Robert D. Stell, opined to the contrary that knowledge of these records would have undermined the probable cause finding by the grand jury.

{¶13} Prior to both prosecutions of Artuso, Felt had been disciplined for financial improprieties: passing bad checks and failing to reimburse charges on a government issued credit card. At the time Felt testified in Artuso's sexual assault trial (September 2018), there was a warrant out for his arrest. The reason for the warrant being issued is unclear from the record, but appears to be related to the nonpayment of real estate taxes. This information was not made known to either Artuso or the prosecutor during the course of the underlying proceedings.

{¶14} With respect to the illegally seized evidence, Artuso referred to the seizure of approximately $8,450 from the home of Adam and Betty Holman in February 2018. Adam and Betty are apparently the parents of Reginald Holman, a person identified in the Search Warrant Affidavit as being involved with Artuso in the theft of cash from the vacant home. Artuso claimed the money seized from the Holmans' home was a critical piece of evidence in the case against him because it was purportedly consistent with money found in his home. In *Ashtabula v. Holman*, 11th Dist. Ashtabula No. 2019-A-0060, 2020-Ohio-2892, this court noted that the seizure had been found unlawful as it exceeded the scope

5

Case No. 2022-A-0009

of the search warrant, which was limited to physical or electronic documents relating to the crime of Election Falsification. *Id.* at ¶ 2-7.

{¶15} In a supporting Affidavit, Felt asserted his innocence and averred that, had he been aware of the foregoing circumstances, he would not have entered the "no contest" plea. Artuso's Affidavit states:

> During the pendency of the criminal proceedings, I was fired from my position as Housing Inspector. I was also fired from my position as an auxiliary police officer for Ashtabula and as a part-time officer for the Village of Jefferson. I was forced to sell my home and liquidate my Ohio Public Employees Retirement System account in order to meet my living expenses and provide for my defense. In addition, I borrowed substantial sums from family members. Following my acquittal in the matter *State of Ohio v. John Artuso*, Ashtabula County Court of Common Pleas, Case No. 2018 CR 00061, I lacked the money to continue to fund my criminal defense. Further, I had been advised by my criminal defense attorney that he would be withdrawing from my representation in the matter of *State of Ohio v. John Artuso*, Ashtabula County Court of Common Pleas, Case No. 2018 CR 00356 due to a conflict of interest.
>
> Had I known of former detective Felt's history of financial misconduct, his falsification of his search warrant affidavit, his perjured testimony before the Ashtabula County Grand Jury, the manipulation of the Ashtabula police department's investigative report, the fact that the Ashtabula detectives initiated and/or encouraged criminal proceedings against me without probable cause as to the Judy Smith [sexual assault] allegations and as confirmed by Chief Robert Stell, and the fact that funds had been illegally seized from the Holman residence, I would have continued to fight the criminal charges brought against me in this matter.

{¶16} On February 10, 2022, the trial court denied the Motion to Vacate Plea. The court offered the following in support of the denial:

> The rape and theft cases are two separate cases. The fact that the incidents were administered under a single file or investigation number for administrative purposes or otherwise is irrelevant and insignificant. * * * While it is understandable that the defense seeks to import bad, questionable or even criminal behavior

6

on the part of Detective Felt in the rape case to the theft, the effort falls flat. There is no taint upon the theft investigation that is attributable to the separate rape case.

Particular mention should be made of the defense claim that Detective Hollis' December 20, 2017 narrative was not produced by the state because of an "intentional manipulation of the investigative file" * * *. This statement is overreach on the part of the defense. First, this issue concerns the rape case, not the theft. Second, there is no effort or explanation on the part of the defense to ascribe a motive to Felt's connivance directed at the defendant that would line up with such sinister conduct. Third, the Hollis narrative's omission could simply be the result of inadvertence. Fourth, it was never adequately explained why defendant could not obtain his exculpatory work records through his own efforts. After all, they are his own employment records. Last, the record of the rape case reveals that * * * the defendant's own exhibit list, filed in the rape case on September 21, 2018, included "Ashtabula Inspection Report Record" dated December 20, 2017 listing Defendant's work-related activities on September 15, 2017.

Are these not the very exculpatory records defendant claims were suppressed by Felt in his grand jury testimony?

The fact that Felt may have been incompetent or an "embellisher" or even a liar at some points in the rape case did not affect the outcome in either the rape or theft cases. The court is convinced the search warrant in the rape case (not relevant, in any event, to the theft case[1]) would have been issued even if the alleged undercover operation or anything like it had not been alleged in Felt's affidavit. The defense didn't seek to suppress the evidence obtained as a result of the searches made pursuant to search warrant in either case [sic].

The court further finds there were no <u>Brady</u> violations. The type of evidence defendant argues the state had a duty to disclose (Felt's violation of departmental rules, alleged false statements in support of request for search warrants or in grand jury proceedings) is not exculpatory evidence. It is impeachment evidence not required to be disclosed prior to a defendant entering a plea. * * *

---

1. As noted by Artuso, the search warrant in question was part of the theft, not the rape case.

Case No. 2022-A-0009

The disclosure of impeachment evidence is aimed more so where the case goes to trial than where a defendant voluntarily enters a plea.

In this case, it appears the defendant wanted to enter a plea not because of any pressure occasioned by official misconduct. The defense explanation that he did so because he was financially (and perhaps emotionally) exhausted after his acquittal in the rape [case] just two months earlier, does not seem plausible. More likely the plea entered was made because the facts warranted doing so. In this regard, it should be noted that the approximate $8,450.00 in cash seized from the Holman residence had not been ruled illegally obtained at the time Mr. Artuso entered his plea on December 3, 2018. The Holman decision suppressing that evidence was not filed until about six months later, on June 25, 2019. Had that search not been invalidated that could have adversely impacted the Artuso case. Such consideration could have entered into the calculus for the no contest plea, a consideration that had nothing to do with improper behavior on the part of Felt.

{¶17} On March 14, 2022, Artuso filed a Notice of Appeal. On appeal, he raises the following assignments of error:

[1.] The Trial Court erred in denying Appellant's application to vacate his no contest plea where the record demonstrates that the lead investigating officer offered false testimony, attempted to manipulate the criminal process and Appellant was denied the benefit of exculpatory and impeachment evidence that directly impacted Appellant's decision to enter a no contest plea.

[2.] The Trial Court erred in denying Appellant's application to vacate his no contest plea where the record demonstrates that the criminal process was fundamentally unfair due to initiation of the criminal proceedings through false testimony and withholding of exculpatory and impeachment evidence that directly impacted Appellant's decision to enter a no contest plea.

{¶18} Criminal Rule 32.1 provides that "to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." "A defendant who seeks to withdraw a plea of guilty after the imposition

8

of sentence has the burden of establishing the existence of manifest injustice." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. "This term has been variously defined, but it is clear that under such standard, a postsentence withdrawal motion is allowable only in extraordinary cases." *Id.* at 264; *State v. Straley*, 159 Ohio St.3d 82, 2019-Ohio-5206, 147 N.E.3d 623, ¶ 14 ("[a] 'manifest injustice' is a 'clear or openly unjust act'") (citation omitted).

{¶19} "A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion of the trial court, and the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Smith* at paragraph two of the syllabus.

{¶20} Artuso's argument in favor of withdrawing his guilty plea, stated generally, is that the discovery of evidence of Felt's misconduct, i.e., his false affidavit and grand jury testimony, failure to deliver a complete investigative file to prosecutors, and financial improprieties, renders his plea invalid inasmuch as it was not entered knowingly, intelligently, or voluntarily in the absence of such evidence being known to him. It is worthwhile to consider how such an argument relates to the manifest injustice standard established by Criminal Rule 32.1.

{¶21} "Ohio courts have held that 'manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process.'" (Citation omitted.) *State v. Bradford*, 8th Dist. Cuyahoga Nos. 110907 et al., 2022-Ohio-1503, ¶ 12; *State v. Jones*, 4th Dist. Gallia No. 19CA9, 2020-Ohio-7037, ¶ 21 ("[a] trial court violates a defendant's due process rights, and hence may produce a manifest injustice, if it accepts a guilty plea that the defendant did not

9

enter knowingly, intelligently, and voluntarily") (citation omitted). Accordingly, "[i]f a defendant shows that he or she did not enter a plea knowingly, intelligently or voluntarily, the defendant may establish a manifest injustice sufficient to warrant withdrawal of the guilty plea under Crim.R. 32.1." (Citation omitted.) *State v. Pishner*, 11th Dist. Portage No. 2021-P-0063, 2022-Ohio-2099, ¶ 18.

{¶22} "Ohio's appellate courts generally agree that misinforming a defendant about the circumstances of his guilty plea constitutes a 'manifest injustice' and a violation of due process that entitles a defendant to withdraw his guilty plea pursuant to Crim.R. 32.1." *State v. Dunlap*, 161 Ohio St.3d 1416, 2021-Ohio-181, 161 N.E.3d 704, ¶ 4 (Donnelly, J., dissenting). *See State v. Frye*, 10th Dist. Franklin Nos. 14AP-988 and 14AP-989, 2015-Ohio-3012, ¶ 15 ("when considering whether newly discovered evidence warrants withdrawal of a guilty plea, a trial court should consider whether the defendant may have a complete defense to the charges"); *State v. Moore*, 4th Dist. Pike No. 01CA674, 2002-Ohio-5748, ¶ 21 ("in order to make a knowing and intelligent decision regarding whether to enter a plea, Moore needed to be apprised of the existence of this [exculpatory] evidence"). It is also established that the discovery of exculpatory evidence or other information vital to entering a knowing, intelligent, and voluntary plea may result in a violation of due process justifying the vacation of an otherwise valid plea. *State v. Guevarra*, 6th Dist. Lucas Nos. L-21-1096 and L-22-1010, 2022-Ohio-1974, ¶ 17 ("in extraordinary cases, new attestations of fact, which an effective lawyer might not reasonably have anticipated in counseling his client, may be adduced after a conviction by plea and give rise to the possibility that actual innocence marks the conviction as a manifest injustice") (citation omitted).

10

{¶23} In light of the foregoing, Felt's misconduct could support a manifest injustice finding if the trial court were also to find that this misconduct compromised the knowing, intelligent, and voluntary nature of Artuso's plea so as to constitute a violation of due process. *Compare Ferrara v. United States*, 456 F.3d 278, 291 (1st Cir.2006) ("[u]nder limited circumstances, however–everything depends upon context–the prosecution's failure to disclose evidence may be sufficiently outrageous to constitute the sort of impermissible conduct that is needed to ground a challenge to the validity of a guilty plea"). We emphasize that it is not the misconduct per se that potentially renders a plea invalid, but the effect such misconduct had on the nature of the plea. *Straley*, 159 Ohio St.3d 82, 147 N.E.3d 623, 2019-Ohio-5206, at ¶ 17 ("the sentence imposed is not the issue," but, rather, "the effect that the trial court's erroneous statements had on Straley during the plea proceedings"); *compare* Brief of Appellant at 17-18 ("[a]ppellant respectfully submits that the Ashtabula police department should not be rewarded for the failure by allowing Artuso's no contest plea to stand").

{¶24} Another aspect of Artuso's argument is that the failure to advise him regarding Felt's financial improprieties constitutes a violation of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.E.2d 215 (1963), which held that a "State violates a defendant's right to due process if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Smith v. Cain*, 565 U.S. 73, 75, 132 S.Ct. 627, 181 L.Ed.2d 571 (2012). Artuso notes that "[t]he government's duty of disclosure under *Brady* applies equally to exculpatory and impeaching evidence * * *." Brief of Appellant at 13, citing *United States v. Bagley*, 473 U.S. 667, 676, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) ("[i]mpeachment evidence * * * as well as exculpatory evidence,

11

falls within the *Brady* rule"). *Compare United States v. Nelson*, 979 F.Supp.2d 123, 129 (D.D.C.2013) ("[w]hile neither the D.C. Circuit nor the Supreme Court has spoken on whether a defendant can withdraw his guilty plea postsentencing if he entered it without the government having disclosed exculpatory evidence it possessed, the majority of [federal] circuits to have considered the issue have held that a *Brady* violation can justify allowing a defendant to withdraw a guilty plea").

{¶25} This argument was discussed at length in *State v. Riley*, 4th Dist. Washington No. 16CA29, 2017-Ohio-5819. In *Riley*, it was argued that a manifest injustice (and *Brady* violation) occurred where the state failed to disclose evidence of an inappropriate relationship between the investigating officer and the victim. "[A]ppellant does not argue that the trial court failed to comply with any particular aspect of Crim.R. 11(C)(2)," rather, "appellant asserts that he did not voluntarily, knowingly, and intelligently enter his guilty plea due to the state's failure to disclose allegedly favorable and material impeachment evidence." *Id.* at ¶ 21.

{¶26} Acknowledging that the *Brady* rule encompassed impeachment evidence, the *Riley* court found no violation of the rule. The court noted that the *Brady* rule is "principally" a trial right intended to safeguard the fairness of the proceedings at trial. "When a defendant pleads guilty, however, concerns regarding a defendant's right to a fair trial 'are almost completely eliminated because' the defendant admitted guilt.'" (Citation omitted.) *Id.* at ¶ 25.[2] The court then cited to United States Supreme Court

---

2. In the present case, Artuso entered a plea of "no contest," which "is not an admission of defendant's guilt, but is an admission of the truth of the facts alleged in the indictment." Crim.R. 11(B)(2). For present purposes, the distinction between admitting guilt and admitting the facts alleged in the indictment is not material: "After all, when a defendant has admitted all the facts that constitute a crime, there necessarily is sufficient evidence for a conviction." *Girard v. Giordano*, 155 Ohio St.3d 470, 2018-Ohio-5024, 122 N.E.3d

12

precedent that, outside of trial, the *Brady* rule did not apply to impeachment evidence: "[T]he Constitution does not require the Government to disclose material impeachment evidence prior to entering a plea agreement with a criminal defendant." *Id.* at ¶ 25, quoting *United States v. Ruiz*, 536 U.S. 622, 633, 122 S.Ct. 2450, 153 L.E.2d 586 (2002); *Disciplinary Counsel v. Kellogg-Martin*, 124 Ohio St.3d 415, 2010-Ohio-282, 923 N.E.2d 125, ¶ 29 ("*Ruiz* plainly holds that the state is not required to disclose impeachment evidence to a defendant before the defendant pleads guilty"). In the absence of a "constitutional right to preguilty plea disclosure of material impeachment information * * *, the state's failure to disclose the alleged impeachment evidence does not demonstrate a manifest injustice." *Riley* at ¶ 30.

{¶27} Considering the evidence before the trial court in the present case, we conclude that the court did not abuse its discretion by denying Artuso's Motion to Vacate Plea. Artuso's strongest argument for a *Brady* violation concerns the Rape and Sexual Battery case rather than the present case. Regardless of how one characterizes Felt's motives for not acknowledging the existence of work and cell phone records before the grand jury, the sexual assault charges were unrelated to the theft charges. At most, it could be argued that, if the exculpatory records had been presented to the grand jury, Artuso could have avoided indictment for the sexual assault charges and that, not undergoing trial on those more serious charges, he would have had the financial and emotional resources to contest the theft charges. Such an argument is not conclusive, however, and the trial court need not accept it. We note that the prosecution for the

---

151, ¶ 17. Moreover, under both types of pleas the defendant waives the right to trial and attendant rights to guarantee a fair trial.

Case No. 2022-A-0009

sexual assault charges continued even after the work and cell phone records became known to the parties and the prosecutor in that case believed a conviction could have been obtained despite the records. Otherwise, evidence of Felt's false testimony could only serve as impeachment evidence.

{¶28} With respect to the Search Warrant Affidavit in the present case, Artuso maintains that Felt's misrepresentations were such that, without them, there would not have been sufficient probable cause for the issuance of a search warrant. Reply Brief of Appellant, at 3. We disagree. Felt's misrepresentations about being involved in an undercover two-year investigation and the existence of proven criminal conduct were contained in a single paragraph relating background information. These details have little relevance to the request for a warrant to search for "[r]eceipts, bank statements, financial documents and U.S. currency" to support possible charges for Theft and Interfering with Civil Rights. In substance, the Search Warrant Affidavit relies on statements made by Darnetta Bennett to FBI agents that a large amount of cash had been found in a vacant house by Harrison Brown. Artuso and Brown were reported to have counted the money and then divided it among various persons. According to Bennett, Brown gave a share of the money to Jashon Hunt. Hunt was also interviewed by FBI agents but claimed to have received his share of the money directly from Artuso. In either case, Artuso was identified as the person responsible for disbursing the money.

{¶29} Finally, Artuso's claim that Felt's financial problems should have been disclosed is largely undermined by the decisions in *Riley* and *Ruiz*, discussed above. The state was not under any constitutional obligation to make known these issues to Artuso and, therefore, its failure to do so does not constitute a manifest injustice.

14

{¶30} Ultimately, the trial court did not find credible Artuso's claims that, had he been aware of Felt's malfeasance, he would not have pled no contest. That decision falls within the bounds of the court's discretion. *Pishner*, 2022-Ohio-2099, ¶ 17 ("the good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by [the trial] court") (citation omitted). In order to affirm the lower court's decision, this court need not adopt the decision of the lower court in all its particulars. It is only necessary to recognize that it was a reasonable decision given the facts of the case. In the present case, the evidence, while compelling with regard to Felt's misconduct in handling the investigation, does little to exculpate Artuso or compromise the knowing, intelligent, and voluntary character of his plea. Accordingly, we affirm.

{¶31} Artuso's assignments of error are without merit.

{¶32} For the foregoing reasons, the denial of Artuso's Motion to Vacate Plea by the Ashtabula County Court of Common Pleas is affirmed. Costs to be taxed against the appellant.


CYNTHIA WESTCOTT RICE, J.,

MARY JANE TRAPP, J.,

concur.